**ORAL ARGUMENT NOT YET SCHEDULED**

No. 14-5257 Consolidated with No. 15-5088

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

ANTOINE JONES,
*Plaintiff-Appellant*

v.

STEVE KIRCHNER, D.C. MPD DETECTIVE, *et al.*,
*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the District of Columbia, No. 12-cv-1334 (Judge Richard J. Leon)

_____

**CORRECTED BRIEF OF APPELLANT**

Arthur B. Spitzer
American Civil Liberties Union of the
    Nation's Capital
4301 Connecticut Ave., NW, Suite 434
Washington, DC 20008
Telephone:  (202) 457-0800, ext. 1004
Facsimile:  (202) 457-0805
Email:  artspitzer@aclu-nca.org

Anthony F. Shelley
    *Counsel of Record*
Andrew T. Wise
Kathleen T. Wach
Miller & Chevalier Chartered
655 Fifteenth St., NW, Suite 900
Washington, DC 20005
Telephone:  (202) 626-5924
Facsimile:  (202) 626-5801
Email: ashelley@milchev.com

*Counsel for Appellant*

June 29, 2015

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## LIST OF PARTIES AND *AMICI CURIAE*

The following is a list of all individuals and groups who are known to be parties to this case at this time.  There are no known *amici curiae*.

**Appellant**:  Appellant is Antoine Jones.

**Appellees**:  Appellees are:  Joseph Sopata, D.C. MPD Detective, in his individual capacity; Stephen Naugle, F.B.I. Agent, in his individual capacity; Jon Snow, F.B.I. Agent, in his individual capacity; Gregg Horner, F.B.I. Agent, in his individual capacity; Joseph Lowery, F.B.I. Agent, in his individual capacity; Angela McCravy, F.B.I. Agent, in her individual capacity; Brian Mumford, F.B.I. Agent, in his individual capacity; Timothy Pak, F.B.I. Agent, in his individual capacity; Jared Wise, F.B.I. Agent, in his individual capacity; Serghy Kaluzny, F.B.I. Agent, in his individual capacity; Kevin Wolf, F.B.I. Agent, in his individual capacity; Kate Beaton, F.B.I. Agent, in her individual capacity.

## RULINGS UNDER REVIEW

Appellant seeks review of the District Court's Order of September 8, 2014 granting Defendants-Appellees' Motion to Dismiss (Joint Appendix ("JA") at 30) and the Final Judgment entered on February 25, 2015 (JA32).  The District Court's Memorandum Opinion appears at JA14-29 and also at 2014 U.S. Dist. LEXIS 125226 (D.D.C. Sept. 8, 2014).

# RELATED CASES

This Court has not previously heard any appeals in this case, but did previously deny Appellees' motion in this appeal for summary affirmance. In addition, Appellant was a party to at least three prior appeals in this Court, with decisions reported as *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *aff'd sub nom. United States v. Jones*, 132 S. Ct. 945 (2012); *Jones v. Horne*, 634 F.3d 588 (D.C. Cir. 2011); and *In re Jones*, 670 F.3d 265 (D.C. Cir. 2012).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ...................................................................................i

JURISDICTIONAL STATEMENT .....................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

RELEVANT STATUTES AND REGULATIONS...............................................2

STATEMENT OF THE CASE............................................................................2

      A.    Allegations in the Amended Complaint and Procedural
           History ............................................................................................3

      B.    District Court Proceedings ...............................................................6

      C.    Appellate Proceedings.......................................................................8

SUMMARY OF ARGUMENT ...........................................................................9

ARGUMENT ....................................................................................................11

I.     STANDARD OF REVIEW....................................................................12

II.    THE DISTRICT COURT ERRED IN DISMISSING JONES'S
       ALLEGATIONS AS TO THE MANNER OF ENTRY AND
       THE ITEMS SEIZED...........................................................................13

      A.    The Applicable Pleading Standard Is Plausibility, Not
           Probability ....................................................................................13

      B.    Jones Plausibly Alleged That the Officers Failed to
           Knock and Announce ......................................................................14

           1.    The Knock-and-Announce Rule is a Clearly
               Established Constitutional Requirement...................................15

           2.    Jones's Knock-and-Announce Allegation Was Not
               "Conclusory"..........................................................................16

      3.    Jones's Knock-and-Announce Allegation
           Established a Plausible Entitlement to Relief ........................... 17

      4.    Dismissal of Jones's Claim (and Others Like It)
           Would Render the Knock-and-Announce Rule
           Unenforceable in Many Cases .................................................. 19

    C.    Jones Likewise States Plausible Allegations That
        Appellees Exceeded the Scope of the Warrant ................................. 20

III.    THE DISTRICT COURT ERRED IN DISMISSING JONES'S
      ALLEGATIONS AS TO APPELLEES' DISOBEDIENCE OF
      THE WARRANT'S EXPLICIT TIMING RESTRICTION ........................ 23

    A.    When a Magistrate Instructs Officers to Execute a Search
        Warrant Only During Daytime Hours, Non-Compliance
        Constitutes a Violation of the Fourth Amendment ........................... 24

    B.    21 U.S.C. § 879 Does Not Permit Officers to Disregard a
        Warrant's Timing Restrictions .............................................. 30

    C.    It is Clearly Established That Officers May Not Ignore a
        Warrant's Restrictions on When It Can Be Served ........................... 34

    D.    The Court Should Address the Fourth Amendment
        Question Before the Clear-Establishment Question ......................... 37

CONCLUSION ................................................................................. 40

Certificate of Compliance with Rule 32(a) .......................................... *Post*

Certificate of Service ................................................................ *Post*

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

*Cases*

*\*Ashcroft v. al-Kidd*,
   131 S. Ct. 2074 (2011)......................................................................12, 34, 37

*\*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................... 9, 13, 14, 17, 18, 20, 21

*Atherton v. D.C. Office of the Mayor*,
   567 F.3d 672 (D.C. Cir. 2009)..........................................................12

*\*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................9, 13, 14, 19, 20, 21

*Bivens v. Six Unknown Fed. Narcotics Agents*,
   403 U.S. 388 (1971)....................................................................1, 2, 24

*U.S. ex rel. Boyance v. Myers*,
   398 F.2d 896 (3d Cir. 1968) .............................................................24, 26

*Butler v. Balolia*,
   736 F.3d 609 (1st Cir. 2013)............................................................19

*\*Camreta v. Greene*,
   131 S. Ct. 2020 (2011)..............................................................12, 37, 38, 39

*Elkins v. D.C.*,
   690 F.3d 554 (D.C. Cir. 2012)..........................................................21

*Fludd v. U.S. Secret Serv.*,
   771 F.2d 549 (D.C. Cir. 1985)..........................................................24

*Gooding v. United States*,
   416 U.S. 430 (1974)................................................................25, 31, 32, 33

*Heck v. Humphrey*,
   512 U.S. 477 (1994)...........................................................................5

*Hudson v. Michigan*,
   547 U.S. 586 (2006)................................................................15, 19, 20

*In re Jones*,
670 F.3d 265 (D.C. Cir. 2012)..................................................... ii, 5

*Jones v. Horne*,
634 F.3d 588 (D.C. Cir. 2011)......................................................... ii

*Jones v. United States*,
357 U.S. 493 (1958)...................................................................25

*Lederman v. United States*,
291 F.3d 36 (D.C. Cir. 2002)........................................................36

*Monroe v. Pape*,
365 U.S. 167 (1961)...................................................................24

*Muhammad v. California*,
No. C 10-1449 SBA, 2011 WL 873151 (N.D. Cal. Mar. 11, 2011) .................17

*\*O'Rourke v. City of Norman*,
875 F.2d 1465 (10th Cir. 1989) ..........................................26, 27, 35

*Park v. Veasie*,
720 F. Supp. 2d 658 (M.D. Pa. 2010)........................................16, 17

*Pate v. State*,
165 So. 2d 127 (Ala. Ct. App. 1964) ...............................................28

*Pearson v. Callahan*,
555 U.S. 223 (2009)..............................................................37, 38

*Perez v. Borough of Berwick*,
No. 4:07-CV-02291, 2009 WL 1139642 (M.D. Pa. Apr. 28, 2009) .................35

*State v. Jackson*,
742 N.W.2d 163 (Minn. 2007) ................................................25, 30

*Strange v. State*,
530 So. 2d 1336 (Miss. 1988).......................................................28

*United States v. Barragan*,
589 F. Supp. 2d 1012 (S.D. Ind. 2008)..............................................34

*United States v. Burke*,
  517 F.2d 377 (2d Cir. 1975) ................................................................36

*United States v. Castle*,
  213 F. Supp. 52 (D.D.C. 1962) ...........................................................33

*United States v. Heldt*,
  668 F.2d 1238 (D.C. Cir. 1981) ..........................................................36

*United States v. Jones*,
  132 S. Ct. 945 (2012) ...........................................................................5

*United States v. Jones*,
  31 F.3d 1304 (4th Cir. 1994) ..............................................................36

*United States v. Jones*,
  No. 05-cr-386 (D.D.C. May 1, 2013) ...............................................6, 39

*United States v. Kelley*,
  652 F.3d 915 (8th Cir. 2011) ..........................................................25, 28

*United States v. Maynard*,
  615 F.3d 544 (D.C. Cir. 2010) ......................................................... ii, 4

*United States v. Merritt*,
  293 F.2d 742 (3d Cir. 1961) ....................................................31, 32, 33

*United States v. Restrepo*,
  890 F. Supp. 180 (E.D.N.Y. 1995) .....................................................34

*United States v. Schoenheit*,
  856 F.2d 74 (8th Cir. 1988) .................................................................35

*United States v. Searp*,
  586 F.2d 1117 (6th Cir. 1978) .............................................................35

*United States v. Vigo*,
  413 F.2d 691 (5th Cir. 1969) ...............................................................28

*Whitehurst v. Harris*,
  No. 6:14-cv-01602-LSC, 2015 WL 71780 (N.D. Ala. Jan. 6, 2015) ................17

*Wilson v. Layne*,
   526 U.S. 603 (1999)................................................................34

*Wood v. Moss*,
   134 S. Ct. 2056 (2014)............................................................15

*\*Yanez-Marquez v. Lynch*,
   No. 13-1605, ___ F.3d ___, 2015 WL 3719105
   (4th Cir. June 16, 2015) ...........................................27, 28, 33, 35

*Youngbey v. March*,
   676 F.3d 1114 (D.C. Cir. 2012)...........................8, 12, 25, 29, 30, 34

**Statutes**

U.S. Const. amend. IV ...................1-5, 8-12, 15-16, 20, 21, 23-31, 33-39

18 U.S.C. § 1405................................................................32, 33

21 U.S.C. § 879 ..........................................................2, 30, 31, 32, 33

28 U.S.C. § 1291 .................................................................1

28 U.S.C. § 1331 .................................................................1

42 U.S.C. § 1983 ...............................................................1, 2

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................22

Fed. R. Civ. P. 12 .........................................................1, 12, 18

Fed. R. Crim. P. 41..................................................2, 30, 31, 33, 35, 36

\*Authorities on which we chiefly rely are marked with an asterisk.

viii

## JURISDICTIONAL STATEMENT

Appellant Antoine Jones alleges violations of his Fourth Amendment rights arising from Appellees' execution of a search and seizure at his residence.  Jones asserts claims for relief under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983.  The District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  On September 8, 2014, the District Court granted Appellees' motion to dismiss Jones's claims under Fed. R. Civ. P. 12(b)(6).  JA30.  Final judgment was entered on February 25, 2015.  JA32.  Jones filed timely notices of appeal on October 8, 2014 and March 26, 2015.  JA48-49.

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether Jones pleaded a plausible claim for relief, sufficient to survive a motion to dismiss, when he alleged that Appellees violated his Fourth Amendment rights by failing to knock and announce their presence before executing a search and seizure of his home.

2.      Whether Jones pleaded a plausible claim for relief, sufficient to survive a motion to dismiss, when he alleged that Appellees violated his Fourth Amendment rights by seizing 30-40 boxes of personal property that were outside the scope of the relevant search warrant.

3.      Whether Appellees violated the Fourth Amendment when they

executed the search warrant on Jones's residence at 4:45 a.m., in violation of an express restriction on the face of the warrant commanding that it be executed only between 6:00 a.m. and 10:00 p.m.

4.     Whether Appellees' 4:45 a.m. search violated clearly established law, such that qualified immunity does not shield them from liability.

## RELEVANT STATUTES AND REGULATIONS

Relevant portions of Fed. R. Crim. P. 41 and 21 U.S.C. § 879 are set out in the Addendum to this brief.

## STATEMENT OF THE CASE

This appeal presents significant issues concerning the pleading standards in *Bivens* and § 1983 actions and the duty of law enforcement officers to abide by the express terms of search warrants.  The Court must decide whether, based on the facts alleged in his amended complaint, Jones stated a claim with regard to Appellees' failure to abide by the knock-and-announce requirement and with regard to Appellees' improper seizure of items not listed on the search warrant. The Court must also decide whether Appellees violated the Fourth Amendment when they entered Jones's home at night, contrary to the issuing magistrate's express command limiting service of the warrant to daytime hours, and whether doing so violated clearly established law such that Appellees cannot invoke qualified immunity to thwart Jones's claim.

- 2 -

We begin by summarizing the allegations in Jones's amended complaint and the procedural history of the case. We then turn to the District Court's order granting Appellees' motion to dismiss, followed by a summary of the proceedings that have taken place in this Court.

### A.    Allegations in the Amended Complaint and Procedural History

In 2004, a joint task force of the Federal Bureau of Investigation (FBI) and the District of Columbia Metropolitan Police Department (MPD) began investigating Jones on suspicion of narcotics violations. During the course of the investigation, law enforcement officers searched Jones's apartment, warehouse, and nightclub, as well as two of his vehicles (by attaching GPS devices and tracking them) and, lastly, his home, located at 10870 Moore Street in Waldorf, Maryland. Though Jones in this case has alleged Fourth Amendment violations arising from all of those searches, and all of his claims were dismissed by the District Court (JA30), his appeal is limited to the District Court's dismissal of Claim V of his amended complaint, which relates to the search of his Moore Street residence. As a result, we recount only the allegations related to that search.

On October 22, 2005, an FBI special agent applied for and was granted by a magistrate judge for the U.S. District Court for the District of Maryland a warrant authorizing a search of Jones's Moore Street residence for illegal drugs and related evidence. JA38. The warrant form was pre-printed to instruct the executing

officers to search either "in the daytime – 6:00 A.M. to 10:00 P.M." or "at any time in the day or night as I find reasonable cause has been established."  Ex. A1 to D.C. Cir. Doc. 1536082 (copy of search warrant).  The magistrate affirmatively crossed out "at any time in the day or night as I find reasonable cause has been established," requiring the executing officers to perform the search in the daytime only.  *See id.*; *see also* JA38, JA45.

As Jones alleges, on October 24, 2005, in violation of that express timing limitation in the search warrant, Appellees executed the warrant and entered his residence at 4:45 a.m.  JA38.  They also entered the home without first knocking and announcing their presence, despite the fact that the search did not involve exigent circumstances justifying a no-knock entry.  JA39, JA45.  Once inside the home, Appellees rushed upstairs and pointed guns at the heads of Jones and his wife as they stood naked in their bedroom.  JA38.  Appellees proceeded to search the home and take 30-40 boxes containing personal property that was not listed on the warrant attachment delineating the scope of what could be seized.  *Id.*  Jones was arrested that day and has since remained incarcerated.  JA38, JA41.

Jones was tried and convicted of conspiracy to distribute cocaine in January 2008 (after an initial hung jury).  JA41.  In 2010, this Court reversed Jones's conviction because law enforcement officers' warrantless use of a GPS tracking device on Jones's vehicle violated his Fourth Amendment rights.  *See United States*

*v. Maynard*, 615 F.3d 544, 549 (D.C. Cir. 2010). In 2012, the Supreme Court affirmed, holding that the placement of the GPS tracking device on Jones's vehicle without a warrant constituted a search for Fourth Amendment purposes. *United States v. Jones*, 132 S. Ct. 945 (2012).

As explained in his amended complaint, Jones filed several *pro se* complaints in June and July of 2007 alleging civil rights violations arising from the searches of the Moore Street residence, as well as the searches of his car, apartment, warehouse, and nightclub. JA42. The complaints were docketed as Nos. 1:07-cv-01172, 1:07-cv-01063, 1:07-cv-01068, and 1:07-cv-01300. On May 27, 2008, several months after Jones's criminal conviction, the District Court issued orders dismissing those complaints pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), on the ground that if the wrongs Jones alleged were proven, it would invalidate his conviction. Jones later filed a motion for leave to file a notice of appeal, which the District Court denied. Jones sought to challenge that denial in a filing that this Court "deemed . . . a petition for writ of mandamus," and, as such, the Court denied the mandamus petition. *In re Jones*, 670 F.3d 265, 266 (D.C. Cir. 2012). In that opinion, however, this Court recognized that, with the reversal of Jones's conviction, the *Heck* bar had been removed, *id*. at 267, and therefore suggested that Jones "might consider re-filing his complaint." *Id*. at 268.

- 5 -

Jones then filed the instant lawsuit *pro se* in August 2012, and in January 2013, he filed an amended complaint with the assistance of counsel.  On May 1, 2013, after another hung jury in his criminal case and while still incarcerated and awaiting potentially another retrial, Jones pleaded guilty to certain drug-related charges, serving a 15-year prison sentence with credit for time already served.  *See* Doc. 751 in *United States v. Jones*, No. 05-cr-386 (D.D.C. May 1, 2013).

### B.    District Court Proceedings

On September 11, 2013, Appellees filed a motion to dismiss Jones's amended complaint in this case in its entirety.  D.C. Dist. Ct. Doc. 37.  On September 8, 2014, the District Court (Judge Richard J. Leon) granted the motion in full.  JA30.  Jones filed a notice of appeal on October 8, 2014.  JA48.  The District Court entered a further order of dismissal on February 18, 2015, after it became clear to the District Court that Jones did not seek to pursue claims against "Doe" defendants who had never been served.  JA31.  The District Court then entered final judgment on February 25, 2015.  JA32.  Jones filed a subsequent notice of appeal from that judgment on March 26, 2015.  JA49.

Although the District Court had dismissed Jones's entire amended complaint, which contained six distinct claims, *see* JA33-47, Jones pursues in this appeal only the dismissal of Claim V, pertaining to the search of his Moore Street residence.  Thus, this appeal is relatively narrow in scope, as Claim V concerns

only the allegations regarding no-knock entry, the seizure of 30-40 boxes of

property, and the timing of the search (which, essentially, constitute three "sub-

claims" within Claim V).

In its Memorandum Opinion, the District Court first addressed the no-knock-

entry and seizure-of-property claims.  JA25.  The court found that Jones's

allegations "do not meet the standards for pleading a claim upon which relief can

be granted" because Jones "d[id] not plead sufficient facts to raise his allegations

from possibility to plausibility!"  *Id.* (exclamation point in original).  While Jones

alleged that Appellees broke and entered his home without first knocking and

announcing their presence, the court noted that, according to Jones's amended

complaint, he and his wife were "upstairs in their bedroom when the officers

entered."  JA26.  On that basis, the court determined it could "infer that Mr. Jones

did not *hear* a knock and announce, but no more."  *Id.* (emphasis in original).  As a

result, the court found that Jones's claim that Appellees in fact failed to knock and

announce was a "conclusory allegation" that failed to state a claim.  *Id.*

The District Court next turned to Jones's claim that Appellees unlawfully

exceeded the scope of the warrant by seizing 30-40 boxes of personal property not

described in the warrant attachment.  JA26.  The court noted that Jones did not

"identify what property was seized, describe the scope of the warrant, []or allege

how the seized items exceeded that scope."  *Id*.  As a result, the District Court

found that "this allegation, too, is conclusory and does not state facts which, if accepted as true, are sufficient to state a plausible claim for relief." *Id*.

Finally, the District Court considered Jones's claim that Appellees violated his Fourth Amendment rights by entering his residence at 4:45 a.m., notwithstanding that the search warrant limited entry to the hours of 6:00 a.m. to 10:00 p.m. JA26. Citing this Court's decision in *Youngbey v. March*, 676 F.3d 1114, 1124 (D.C. Cir. 2012), the District Court observed that "[t]he Fourth Amendment does not per se prohibit nighttime searches" and then noted that neither the D.C. Circuit nor the Supreme Court had explicitly found law enforcement officers to violate the Fourth Amendment when they execute a search warrant outside of the time period set by the issuing magistrate. JA27-JA28. The court concluded that Appellees were "protected by qualified immunity from a claim arising from the timing of the search." JA28. The District Court therefore dismissed this claim on the timing of the search, along with the no-knock-entry and seizure-of-property claims.

### C.     Appellate Proceedings

On January 8, 2015, Appellees moved in this Court for summary affirmance of the District Court's order dismissing Jones's amended complaint (including Claim V). *See* D.C. Cir. Doc. 1530841. Jones opposed the motion, and this Court then denied the motion, finding that "[t]he merits of the parties' positions on Claim

V are not so clear as to merit summary action." D.C. Cir. Doc. 1551047. The

Court therefore ordered that the case be calendared for presentation to a merits

panel.

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's order dismissing Claim V of

Jones's amended complaint. First, the District Court erred in dismissing Jones's

claim that Appellees violated his Fourth Amendment rights when they entered his

home without knocking and announcing their presence. The court's decision

rested on a fundamental misapplication of the civil pleading standards set forth in

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

662 (2009). Jones alleged that Appellees entered his home without knocking and

announcing, thereby providing Appellees with fair notice of the claim against them

and establishing that he was plausibly entitled to relief. The District Court,

however, elevated the plausibility standard to a probability standard when it

reasoned that, based on Jones's location at the time Appellees entered his home,

Jones could only claim that he did not *hear* a knock and announce. The District

Court erred, as a matter of applying pleading standards, when it required that Jones

– in his amended complaint – rebut possible defenses to his knock-and-announce

allegations, rather than simply state a set of facts from which it plausibly could be

deduced that Appellees did not knock and announce.

Second, the District Court erred in dismissing Jones's claim that Appellees exceeded the scope of the warrant by seizing 30-40 boxes of personal property that were not listed on the warrant attachment.  The District Court found this allegation "conclusory" because Jones did not identify the specific property seized, the scope of the warrant, or the how the seizures exceeded the warrant's scope.  JA26.  Here, the District Court impermissibly demanded a level of specificity that Jones could not be expected to know at this early stage of the litigation and should not be required to provide.  And as to the District Court's statement that Jones did not sufficiently specify the scope of the warrant, Jones did refer to and rely upon the search warrant throughout his amended complaint, the document is subject to judicial notice, and Appellees were fully aware of the scope of the warrant, given that they themselves obtained and executed it.

Third, the District Court erred in finding that Appellees were "protected by qualified immunity from a claim arising from the timing of the search."  JA28.  Appellees violated the Fourth Amendment when they entered Jones's house at 4:45 a.m. contrary to the explicit limitations entered by the magistrate on the face of the warrant.  Courts have long recognized that when officers execute a search warrant, they must operate strictly within the bounds set by the warrant.  Any contrary rule would eviscerate the magistrate's responsibility to evaluate the reasonableness of proposed searches and to issue warrants only in accordance with those

determinations.  This is particularly true in the context of nighttime searches – an especially intrusive form of search about which the Constitution's Framers were acutely concerned.  When a magistrate determines that a search would be reasonable only if conducted during the daytime, and when the instructions on the warrant reflect that determination, the officers must act accordingly.  If they fail to do so, they violate the Fourth Amendment.  This principle has been established with sufficient clarity that Appellees should not have been granted qualified immunity and shielded from liability in this case.

## <u>ARGUMENT</u>

In this appeal, Jones seeks review of only the District Court's dismissal of Claim V of his amended complaint, in which he alleged that Appellees, while executing a search warrant at his Moore Street residence, violated his Fourth Amendment rights by:  (1) failing to knock and announce their presence before entering the home; (2) seizing 30-40 boxes of personal property that were outside the scope of the search warrant and therefore not subject to lawful seizure; and (3) executing the search warrant at 4:45 a.m., in direct violation of a restriction on the face of the warrant requiring execution only between 6:00 a.m. and 10:00 p.m.

For the reasons set forth below, the District Court erred in dismissing Claim V.  This Court should therefore reverse the District Court's decision and remand for further proceedings.

## I.     STANDARD OF REVIEW

Jones appeals the District Court's dismissal of his no-knock-entry and seizure-of-property claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  This Court reviews such dismissals *de novo*.  *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

Similarly, with regard to Jones's nighttime-search claim, "the question . . . is whether [Jones's] asserted rights were clearly established when [Appellees] executed the search warrant.  This involves issues of law which 'must be resolved *de novo* on appeal.'"  *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012).  As the Supreme Court has explained, "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  This Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  *Id*.  Although the Court could address the "clearly established" prong first, thereby potentially avoiding judgment on the Fourth Amendment question presented here, the Supreme Court has also cautioned that such a "policy of avoidance" will "sometimes . . . leave standards of official conduct permanently in limbo."  *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011).

## II.  THE DISTRICT COURT ERRED IN DISMISSING JONES'S ALLEGATIONS AS TO THE MANNER OF ENTRY AND THE ITEMS SEIZED

### A.  The Applicable Pleading Standard Is Plausibility, Not Probability

In dismissing Claim V, the District Court incorrectly found that "[Jones's] allegations regarding a failure to knock and announce and seizure of personal property do not meet the standards for pleading a claim upon which relief can be granted."  JA25.  The District Court cited generally to the Supreme Court's opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and then explained that these decisions' "facial plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" JA25 (quoting *Iqbal*, 556 U.S. at 678).  The District Court concluded that "Mr. Jones does not plead sufficient facts to raise his allegations from possibility to plausibility!"  *Id.*

In general, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).  A complaint will survive a motion to dismiss so long as it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has cautioned that "the pleading standard . . . does not require detailed factual allegations," *id.* at 678; that "[t]he

plausibility standard is not akin to a probability requirement ," *id.*; and that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In finding Jones's allegations insufficient, the District Court ignored the Supreme Court's instructions about how the *Twombly/Iqbal* test should be employed. Instead, it imposed a probability requirement and demanded detailed factual allegations that are unnecessary at the pleading stage. As demonstrated below, Jones's allegations that Appellees violated the knock-and-announce requirement and exceeded the scope of the warrant were pleaded with adequate specificity to satisfy the *Twombly/Iqbal* standard (and otherwise state a cognizable claim).

**B.     Jones Plausibly Alleged That the Officers Failed to Knock and Announce**

In dismissing Jones's knock-and-announce allegations, the District Court found that "[t]he complaint's contention that the officers did not knock and announce is a conclusory allegation that does not state a claim that officers violated a clearly established right." JA26. But an officer's failure to knock and announce does violate a clearly established right, Jones's allegation that the police did not knock and announce prior to entry was not "conclusory," and his factual allegations were precise enough to state a plausible claim for relief. More

generally, the heightened pleading standard applied by the District Court, if endorsed here on appeal, would render the knock-and-announce rule unenforceable in many cases.

### 1.    The Knock-and-Announce Rule is a Clearly Established Constitutional Requirement

"The common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006).  Since 1995, that principle has been recognized as "a command of the Fourth Amendment." *Id*. (citing *Wilson v. Arkansas,* 514 U.S. 927, 931-36 (1995)).  Unless some established exception to the rule applies, officers executing a search warrant must knock and announce their presence before entering. *Id*. at 589-90.  In turn, qualified immunity will not protect a government official from liability for civil damages if a plaintiff "pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014).  Here, the officers' conduct, as alleged by Jones, undoubtedly implicates a clearly established constitutional right. *See Hudson*, 547 U.S. at 598 (collecting circuit court cases denying qualified immunity in knock-and-announce civil suits).  Accordingly, insofar as the District Court held that there is no clearly established right to be free from a search and

seizure preceded by a knock and announcement, the District Court plainly erred.

### 2.    Jones's Knock-and-Announce Allegation Was Not "Conclusory"

The District Court's finding that the knock-and-announce allegation was "conclusory" is also incorrect.  The amended complaint does not, for example, merely state that Appellees "violated Plaintiff's Fourth Amendment rights," leaving Appellees to guess how they allegedly did so.  Rather, the amended complaint explains the constitutional knock-and-announce requirement and the "exigent circumstances" exception, JA33-JA47, alleges that no exigency existed, JA39, and alleges that Appellees "br[oke] and enter[ed] into the Moore Street [residence] . . . without knocking and announcing their presence." JA45.  It is difficult to imagine how Jones could have made his allegation any more specific.

Courts have repeatedly denied defendants' motions to dismiss when plaintiffs, who alleged knock-and-announce violations, worded their complaints in the same manner as Jones.  For instance, in *Park v. Veasie*, 720 F. Supp. 2d 658 (M.D. Pa. 2010), the complaint stated that "Veasie and the other individual officer Defendants approached the home with guns drawn, failed to properly announce their identity, authority and purpose, and instead broke into the front door of the home." *Park v. Veasie*, No. 09-2177, Doc. 4 (amended complaint) ¶ 33 (M.D. Pa. Dec. 3, 2009).  Faced with this complaint, the court found that "Plaintiffs do not simply allege rote legal conclusions in their allegations of Fourth Amendment

violations against Defendants Veasie, Bogart and Markochik; instead, they have supported their allegations of misconduct with specific actions that go beyond mere 'labels.'" 720 F. Supp. 2d at 665 (citing *Iqbal,* 556 U.S. at 677-78).

Similarly, in *Whitehurst v. Harris*, No. 6:14-cv-01602-LSC, 2015 WL 71780 (N.D. Ala. Jan. 6, 2015), the pleading stated that "[t]he Defendants did not knock and announce their presence as law enforcement serving a warrant, but rather knocked the door off its hinges and entered the Whitehurst residence, shouting at the occupants of the home to get down [on] the floor." *Whitehurst v. Harris*, No. 6:14-cv-01602-LSC, Doc. 4 (amended complaint) ¶ 13 (N.D. Ala. Jan. 6, 2015). The court found that "Whitehurst has stated a plausible claim against [the defendant officers] for unlawful entry based on a failure to knock and announce. She alleges that Defendants entered her home without first announcing their presence." 2015 WL 71780, at *5; *see also Muhammad v. California*, No. C 10-1449 SBA, 2011 WL 873151, at *8-9 (N.D. Cal. Mar. 11, 2011) (denying defendants' motion to dismiss when complaint stated merely that "the breaking and entering . . . was carried out without the knock and announce required by [California law]").

### 3.    Jones's Knock-and-Announce Allegation Established a Plausible Entitlement to Relief

The District Court also erred when concluding that Jones had not pleaded sufficient facts to raise his knock-and-announce allegation "from possibility to

plausibility." JA25. The District Court reasoned that because Jones had "allege[d] that he and his wife were upstairs in their bedroom when the officers entered," it could "infer that Mr. Jones did not *hear* a knock and announce, but no more." *Id*. at JA26 (emphasis in original). But if the District Court could surmise, based on what was pled, that Jones did not hear the officers knock and announce their presence, then it is difficult to understand how it concomitantly could conclude Jones failed to meet the test of alleging "more than a sheer possibility that a defendant ha[d] acted unlawfully," which is all that *Iqbal* requires. 556 U.S. at 678. Indeed, the fact that Jones did not hear a knock and announce is susceptible to two very plausible explanations: either (1) the officers knocked and announced, but Jones did not hear them; or (2) the officers never knocked or announced at all. Establishing evidence that would allow a fact-finder to decide which explanation is more likely is the purpose of discovery and trial, and not the subject of proper consideration on a Rule 12(b)(6) motion to dismiss. A Rule 12(b)(6) motion requires the judge to accept the plaintiff's factual allegations as true and to assess the plausibility, not the probability, that the plaintiff is entitled to relief.

The very fact that Jones could reasonably expect to uncover supporting evidence during discovery is proof that his complaint was adequately pleaded. Potential avenues of discovery are obvious: Jones could, for example, obtain police reports and dispatch recordings and depose members of the search team. As

one appellate court has explained, "[t]o clear the plausibility hurdle," a complaint need only contain "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' sufficient to flesh out a viable claim." *Butler v. Balolia*, 736 F.3d 609, 617-18 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 556). Based on what Jones has alleged, it is reasonable to expect that the discovery process will unearth facts that will strengthen his claim for relief. For that reason, too, it was error for the District Court to dismiss his claim.

> **4.     Dismissal of Jones's Claim (and Others Like It) Would Render the Knock-and-Announce Rule Unenforceable in Many Cases**

Dismissal of claims such as Jones's would leave many victims of knock-and-announce violations without any legal remedy. In *Hudson*, the Supreme Court determined that suppression of evidence in criminal proceedings was not an appropriate remedy for violations of the knock-and-announce rule. 547 U.S. at 594. The Court rejected the notion "that without suppression there will be no deterrence of knock-and-announce violations at all," 547 U.S. at 596, instead pointing to civil lawsuits as a promising, alternative means of obtaining relief. *Id.* at 597. The Court was satisfied that "[a]s far as we know, civil liability is an effective deterrent" against knock-and-announce violations. *Id.* at 598.

But if cases such as Jones's cannot survive motions to dismiss, there will be no effective deterrent. The only victims of knock-and-announce violations able to

survive the high pleading standard applied by the District Court would be those who could allege that they were just inside their front doors when the police entered.  But the vast majority, who prior to discovery could only assert that the police entered their homes and that they did not hear the police knock and announce before doing so, would be barred from seeking relief.  If cases such as this are stopped in their tracks at the motion-to-dismiss stage, many plaintiffs with legitimate Fourth Amendment claims are likely to be left without a remedy.  That was not the outcome envisioned by the Supreme Court when it decided *Hudson*.

### C.    Jones Likewise States Plausible Allegations That Appellees Exceeded the Scope of the Warrant

In his amended complaint, Jones alleged that Appellees "confiscat[ed] 30-40 boxes of personal property belonging to Plaintiff that were not mentioned on the attachment to the warrant" and therefore "unlawfully exceeded the scope of the warrant."  JA33-JA47.  The District Court noted that Jones did not "identify what property was seized, describe the scope of the warrant, []or allege how the seized items exceeded that scope."  JA26.  As a result, the District Court found that "this allegation, too, is conclusory and does not state facts which, if accepted as true, are sufficient to state a plausible claim for relief."  *Id*.  Again, the District Court misapplied *Twombly* and *Iqbal*.

As an initial matter, the right to be free from "general" searches that exceed the bounds of a properly authorized warrant is one of the most well-established

constitutional rights we enjoy, arising from the text of the Fourth Amendment itself.  The Amendment's "particularity requirement" mandates that all search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "The particularity requirement 'prevents the seizure of one thing under a warrant describing another.'"  *Elkins v. D.C.*, 690 F.3d 554, 564 (D.C. Cir. 2012) (quoting *Marron v. United States,* 275 U.S. 192, 195 (1927)).

For several reasons, Jones's amended complaint raises a plausible allegation, not a conclusory one, that Appellees – in contravention of the particularity requirement – seized items that were outside the scope of the search warrant.  First, Jones did not plead merely that Appellees "exceeded the scope of the warrant."  Jones explained *how* they exceeded the scope of the warrant – by seizing 30-40 boxes of his personal property that were not listed on the attachment to the warrant.

Second, Jones's allegation raises more than a sheer possibility that he is entitled to relief.  The District Court made much of the fact that Jones did not describe the scope of the warrant in his pleading.  Even assuming the unlikely conclusion that such detail was necessary under *Twombly*/*Iqbal*'s pleading standard, the Appellees in fact had access to the warrant attachment, such that they were put on notice of the nature of Jones's allegations, as the warrant was

- 21 -

a judicial document, available in the files of the District Court and subject to judicial notice.

Third, the District Court was wrong to find that Jones's complaint was insufficient because it did not describe "how" the items exceeded the warrant's scope. It did – by explaining that the items seized were not listed on the warrant attachment. That attachment consists of a 10-bullet-point description of what Appellees were authorized to search for and seize. *See* Exhibit A-2 to D.C. Cir. Doc. 1536082. Jones should not be expected to provide in his complaint – which is to be a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2) – a detailed inventory of the contents of 30-40 boxes of his property, cross referenced against each of the items listed in the warrant attachment, to show which specific items of his property failed to fit within the scope of the warrant.

It was entirely unreasonable of the District Court to expect greater specificity in Jones's pleading. Given the enormous quantity of property seized (30-40 boxes), it would be impossible, or at least impractical, for Jones to spell out exactly what Appellees took. He likely could not describe the precise contents of the boxes – which of course had not been in his possession since October 2005 – except to say they did not contain evidence of drug dealing. Only with the benefit of discovery could Jones learn exactly what was taken and why, and only then

would he be in a position to articulate why each item of property fell outside the scope of the warrant.[1]

## III.  THE DISTRICT COURT ERRED IN DISMISSING JONES'S ALLEGATIONS AS TO APPELLEES' DISOBEDIENCE OF THE WARRANT'S EXPLICIT TIMING RESTRICTION

The District Court additionally erred in finding that Appellees were entitled to qualified immunity from Jones's claim that they executed the warrant in violation of an explicit limitation articulated by the magistrate judge.  Jones alleged in his amended complaint that Appellees entered his home at 4:45 a.m. even though the warrant required on its face that it be executed only between 6:00 a.m. and 10:00 p.m.  Right off the bat, the District Court misconstrued Jones's claim as one asserting that all nighttime searches are illegal (as opposed to a claim asserting that the time period allowed on the face of the warrant had been breached), correctly then noting (and unremarkably so) that  "[t]he Fourth Amendment does not *per se* prohibit nighttime searches."  JA27.  In reality, Jones does not assert, to put it in terms of the qualified-immunity inquiry, that Appellees violated a clearly established rule by searching his home in the nighttime; he claims they violated a clearly established rule by searching his home in the nighttime *despite* the fact that

---

[1] The face of the warrant return (which was filed in the District Court as Doc. 619-7) itself provides at least one piece of supporting evidence:  Box #16 is simply labelled "misc. documents from Room H, large Bureau."  Without discovery, Jones cannot know what was in Box #16, but the warrant return contains no suggestion that the documents were within the scope of the warrant.

the warrant specifically prohibited them from doing so.  As we show below, when police officers execute a search warrant in a manner that directly contravenes the restrictions imposed by the issuing magistrate, they are not entitled to qualified immunity.

### A.     When a Magistrate Instructs Officers to Execute a Search Warrant Only During Daytime Hours, Non-Compliance Constitutes a Violation of the Fourth Amendment

As a general matter, "the Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 394-95 n.7 (1971).  These boundaries include what the officers may search for and seize, and they may also include restrictions on when a search warrant can be executed.  The ability to restrict the time of a warrant's execution acts as a critical check on the exercise of police powers about which the Framers were acutely concerned.  As Justice Frankfurter articulated:   "Searches of the dwelling house were the special object of this universal condemnation of official intrusion.  Nighttime search was the evil in its most obnoxious form." *Monroe v. Pape*, 365 U.S. 167, 210 (1961); *see also Fludd v. U.S. Secret Serv.*, 771 F.2d 549, 553 (D.C. Cir. 1985) ("It has long been settled that nighttime entries are particularly intrusive."); *U.S. ex rel. Boyance v. Myers*, 398 F.2d 896, 898 (3d Cir. 1968) (noting that the First Congress, in 1789, passed statutes limiting searches to daytime hours).

Courts have repeatedly recognized that the timing of a search can affect whether it is "reasonable" under the Fourth Amendment.  *See Jones v. United States*, 357 U.S. 493, 498 (1958) (finding it "difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home"); *Gooding v. United States*, 416 U.S. 430, 462 (1974) (Marshall, J., dissenting) ("[T]here is no expectation of privacy more reasonable and more demanding of constitutional protection than our right to expect that we will be let alone in the privacy of our homes during the night."); *United States v. Kelley*, 652 F.3d 915, 917 (8th Cir. 2011) (expressing "little doubt that in some circumstances an officer's night-time entry into a home might be unreasonable under the Fourth Amendment."); *State v. Jackson*, 742 N.W.2d 163, 176-77 (Minn. 2007) (recognizing "the historical aversion to nighttime searches, the historical recognition of the unique status of persons in their home at night, the Supreme Court's recognition of the especially intrusive nature of nighttime searches of a home and the holdings of several federal courts that nighttime searches implicate the reasonableness requirement of the Fourth Amendment.").  This Court, too, has recognized that while the Fourth Amendment imposes no blanket prohibition against nighttime searches, the timing of a search can affect its reasonableness.  *See Youngbey v. March*, 676 F.3d 1114, 1124 (D.C. Cir. 2012).

Given the historical sensitivity to searches performed at night, magistrates are

permitted to scrutinize affidavits and determine whether, if a search warrant is issued, it should be executed only during the daytime; and officers are not free to ignore the magistrate's timing limitation.  To that effect, several federal appellate courts have made clear that police officers violate the Fourth Amendment when they violate a warrant's timing restrictions.  In *United States ex rel. Boyance v. Myers*, 398 F.2d 896 (3d Cir. 1968), police officers were investigating a burglary, and at 1:00 a.m., they applied for a warrant to search a private residence.  *Id*. at 897.  A justice of the peace issued the warrant, which instructed them to "search in the daytime."  *Id*.  The officers nonetheless executed the warrant at 2:30 a.m.  *Id*.  Addressing a challenge to the constitutionality of the search, the Third Circuit explained that

> the issue whether the search was in fact authorized by the warrant is determinable by a reading of the warrant's simple and unambiguous language.  To find that a warrant which is explicitly limited to daytime searches legalizes search at any hour of the day or night would be to disregard the magistrate's actual determination and thus to nullify the requirement of a prior impartial determination that a particular search will be reasonable.

*Id*. at 898-99.  The court found the search "constitutionally invalid" and opined that the officers' actions were "no better than . . . if no warrant had been issued, probably worse."  *Id*. at 899.

In *O'Rourke v. City of Norman,* 875 F.2d 1465 (10th Cir. 1989), Oklahoma police officers entered a home at 10:00 p.m. to search for a woman wanted on a

misdemeanor bench warrant. Under Oklahoma law, such warrants could not be served during the night without special authorization from a judge, which the warrant lacked. *Id*. at 1471. Echoing the Third Circuit, the Tenth Circuit stated that "[t]o determine that a warrant limited to daytime execution authorizes the nighttime search of a home is to completely eviscerate the issuing magistrate's determination of reasonableness." *Id*. at 1474. The Tenth Circuit found that the nighttime search violated the Fourth Amendment and further that the officers were not entitled to qualified immunity because they had violated "clearly established" law. *Id*. at 1475.

Most recently, in *Yanez-Marquez v. Lynch*, No. 13-1605, ___ F.3d ___, 2015 WL 3719105 (4th Cir. June 16, 2015), Immigration and Customs Enforcement agents obtained a warrant to search the premises of a business that they suspected was employing and harboring illegal aliens. *Id*. at *1. On the face of the warrant were two options for the issuing magistrate: one instructing the agents to search "in the daytime – 6:00 A.M. to 10:00 P.M.," and the other instructing them to search "at any time in the day or night as I find reasonable cause has been established." *Id*. The magistrate checked a box next to the daytime language and crossed out the "any time" language, thereby commanding the agents to search only between 6:00 a.m. and 10:00 p.m. *Id*. The search was then carried out at 5:00 a.m., an hour earlier than the warrant permitted. *Id*. at *2. Yanez-Marquez, an

illegal alien who was discovered on the premises, challenged the legality of the search. *Id.* at 4. The Fourth Circuit held that "the nighttime execution of a daytime warrant violates the Fourth Amendment, absent consent or exigent circumstances" and concluded that Yanez-Marquez's Fourth Amendment rights had been violated. *Id.* at *27. The court later noted that "for Fourth Amendment purposes, the nighttime search here rendered the search itself warrantless because the magistrate judge's reasonableness finding was premised on a daytime search." *Id.* at *33 n. 21.

Other courts have also recognized that nighttime service of a daytime search warrant is unlawful. *See United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969) ("The search warrant in this cause was a 'daytime warrant,' that is to say that its validity required it be served in the daytime."); *United States v. Kelley*, 652 F.3d 915, 917 (8th Cir. 2011) ("[W]hen police intend at the time they apply for a warrant to execute the search at night, it is unreasonable under the Fourth Amendment not to disclose that intent to the issuing magistrate and to seek express authorization for the night-time search."); *Pate v. State*, 165 So. 2d 127, 128 (Ala. Ct. App. 1964) (when law enforcement officers obtained a search warrant designated for daytime service only, their nighttime search was "patently illegal" and rendered the warrant "void"); *Strange v. State*, 530 So. 2d 1336, 1339 (Miss.

1988) (when search warrant directed officers to search apartment "in the day time," search at 11:30 p.m. was illegal).

It is thus the law that, under the Fourth Amendment, officers must abide by the terms of a warrant prohibiting a nighttime search. Here, Jones alleges that the search of his Moore Street residence was in violation of the specific time limits in the warrant, which constitutes a Fourth Amendment violation under the case law. Accordingly, to the extent that the District Court's decision can be read otherwise – *i.e.*, as indicating that a search is legal even when conducted outside the temporal scope specified by the magistrate, as in Jones's case – the District Court, again, committed legal error.

Nor is *Youngbey v. March*, 676 F.3d 1114 (D.C. Cir. 2012), to the contrary. The District Court cited *Youngbey*, albeit under the misconception that Jones alleged that nighttime searches are illegal, not that searches beyond a magistrate's specified time restrictions are illegal. But in *Youngbey*, this Court took great pains to clarify that it was *not* deciding a case where officers breached a warrant's specific time limitations, as was the case in Jones's situation and in those decisions cited above. *See*, *e.g.*, *Youngbey*, 676 F.3d at 1124 ("[T]here is no 'clearly established law' under the Fourth Amendment prohibiting nighttime searches *where the warrant is unmarked or silent as to the authorized time of execution*.") (emphasis added); *id.* at 1125 ("The language of the warrant certainly

cannot be construed to authorize *only* a daytime search.”); *id.* at 1126 (“[T]here is no clearly established law under the Fourth Amendment that prohibits the nighttime execution of a warrant, *where, as here, the warrant does not prohibit such a search*.”) (emphasis added).  Hence, *Youngbey* provides no support for any proposition that searches beyond a warrant's specified time restrictions are consistent with the Fourth Amendment, a proposition that – if it had been accepted by this Court – would have been in conflict with the great weight of authority.

### B.    21 U.S.C. § 879 Does Not Permit Officers to Disregard a Warrant's Timing Restrictions

In their reply in support of summary affirmance in this Court, Appellees raised for the first time the notion that 21 U.S.C. § 879 authorized their nighttime search, despite the express notation on the face of the warrant for a daytime search. We therefore address § 879 briefly here, starting first with a related legal provision – namely, Fed. R. Crim. P. 41.

Recognizing the particular intrusiveness of nighttime searches, Congress and state legislatures have – since the early days of the Republic – passed laws limiting the circumstances in which such searches could occur.  *See Jackson*, 742 N.W.2d at 169 (providing historical overview).  Currently, Fed. R. Crim. P. 41(e)(2)(A)(ii) states that a search warrant “must command the officer to execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time.”  This rule, however, does not alter magistrates' inherent authority

to judge the reasonableness of all proposed searches, nor does it alter the responsibility of officers to abide by restrictions imposed by magistrates.  In other words, even if Rule 41 did not exist, magistrates would still have the responsibility to scrutinize whether a given search would be reasonable (under the Fourth Amendment) if performed at night, and they would still have the power to prohibit warrant service during nighttime hours.  Congress has always been free to layer additional safeguards atop the baseline of protection provided by the Fourth Amendment, as it did when it enacted Rule 41.

Another provision, § 879, applies specifically in the context of drug searches.  Section 879 provides as follows:

> A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

Section 879 allows a nighttime search, but only so long as there was a finding of probable cause "that the contraband is likely to be on the property or person to be searched at that time."  *Gooding v. United States*, 416 U.S. 439, 458 (1974).

Section 879 (just like Rule 41) does *not*, however, allow executing officers to disregard – as they did in Jones's case – the plain instruction of a magistrate judge who has explicitly limited the time during which a warrant may be served.  Indeed, the Third Circuit so held in *United States v. Merritt*, 293 F.2d 742 (3d

Cir. 1961), a case involving § 879's predecessor statute.  *See generally Gooding*,

416 U.S. at 457 (noting, as to predecessor law, that "[t]here is no suggestion in

any of the hearings or debates before Congress that a change from the prior law in

this area was intended").  In *Merritt*, a federal agent applied for a warrant to

search an apartment where he believed narcotics were being concealed.  293 F.2d

at 743.  The U.S. Commissioner (a magistrate judge) issued a warrant, which

stated that the search should occur "in the daytime."  *Id*.  Officers nonetheless

served the warrant at night.  *Id*.  The defendant contested the search, and the

government argued that the search was not illegal "because the Narcotic Control

Act of 1956 [18 U.S.C. § 1405] provides that 'a search warrant may be served at

any time of the day or night if the judge or the United States Commissioner

issuing the warrant is satisfied that there is probable cause to believe that the

grounds for the application exist.'"  *Id*. at 744.

The Third Circuit quickly dismissed this argument, noting that "the search

warrant by its specific terms provided for its execution 'in the daytime' and that

circumstance is conclusive; it makes irrelevant the fact that the United States

Commissioner is empowered under the Narcotic Control Act to provide for its

service 'at any time of the day or night.'"  *Id*.  Ultimately, the court concluded

that "[s]ince the warrant was 'legally invalid' the officers' entry into the

defendant's apartment was on the same plane as an entry without any warrant at

all and as such was an unlawful 'invasion' within the proscription of the Fourth Amendment." *Id*. at 746.

The following year, the U.S. District Court for the District of Columbia followed *Merritt*, explaining that "18 U.S.C. § 1405 enlarges the power to issue a search warrant for nighttime service, but it does not permit nighttime service if the warrant was issued only for daytime service." *United States v. Castle*, 213 F. Supp. 52, 53 (D.D.C. 1962); *see also Yanez-Marquez v. Lynch*, No. 13-1605, ___ F.3d ___, 2015 WL 3719105, at *33 n.21 (4th Cir. June 16, 2015) (noting that, notwithstanding § 879, "a nighttime execution of a daytime warrant, absent justification, violates the Fourth Amendment"); *cf. Gooding*, 416 U.S. at 442 (allowing nighttime search under § 879 where warrant "stated that the search could be made 'at any time in the day or night'").[2]

In sum, § 879 does not legalize a nighttime search against the express timing directions of the magistrate.  Whether inside or outside the drug setting, or under Fed. R. Crim. P. 41 or § 879, a nighttime search contrary to the magistrate's restrictions violates the Fourth Amendment.

---

[2] Congress could not have, in § 879, authorized violations of a magistrate's timing restrictions in a drug search, since the protection against searches outside of a warrant's confines (temporal or otherwise) emanates from the Fourth Amendment itself.  The constitutional concern only further reinforces the correctness of the courts' holdings that § 879 cannot be read, as a statutory matter, to authorize searches outside of the time period set by the magistrate.

C.    **It is Clearly Established That Officers May Not Ignore a Warrant's Restrictions on When It Can Be Served**

In its Memorandum Opinion, the District Court held that Appellees were entitled to qualified immunity from Jones's nighttime search claim.  JA27-JA28.  This finding was error.  Qualified immunity will not protect Appellees if they violated a clearly established right.  *See Ashcroft v. al-Kidd*, 131 S. Ct. at 2080.  To determine whether a right is clearly established, federal appellate courts look first to precedent from the Supreme Court and from either their own circuit or the circuit in which the relevant events took place.[3]  *See Youngbey*, 676 F.3d at 1117.  Absent clear guidance from those sources, courts will look for "'a consensus of cases of persuasive authority.'"  *Id*. (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

The opinions cited in the previous sections, handed down from numerous federal appellate and state courts, represent a broad consensus of cases holding

---

[3] Though Jones filed suit in a District of Columbia federal court, the searched home is located in Waldorf, Maryland, which is within the Fourth Circuit.  In such circumstances, courts have reached different conclusions about which circuit's law should be applied to determine the Fourth Amendment requirements.  *Compare United States v. Barragan*, 589 F. Supp. 2d 1012, 1015-16 (S.D. Ind. 2008) (applying Ninth Circuit law despite sitting in the Seventh Circuit) *with United States v. Restrepo*, 890 F. Supp. 180, 191-92 (E.D.N.Y. 1995) (recognizing compelling reasons to apply law of forum in which the events occurred, but nonetheless applying its own circuit's precedent).  To the best of Jones's knowledge, neither the D.C. Circuit nor the Fourth Circuit had, at the time Jones's home was searched, decided a case involving the precise facts at issue here.

that officers violate the Fourth Amendment when they disobey a magistrate's

express instructions to conduct a search only during daytime hours.  In fact,

several courts have addressed the qualified-immunity question and held that

qualified immunity does *not* exist to shield officers from liability when they

conduct a search at night in violation of the timing restrictions of a warrant.  *See*,

*e.g.*, *O'Rourke v. City of Norman*, 875 F.2d 1465, 1476 (10th Cir. 1989) (denying

qualified immunity to officers and stating that they "should have known that the

nighttime execution of a daytime warrant in a family residence was unreasonable

under the Fourth Amendment"); *Perez v. Borough of Berwick*, No. 4:07-CV-

02291, 2009 WL 1139642, at *5-8 (M.D. Pa. Apr. 28, 2009) (denying qualified

immunity to searching officers and finding it to be "clearly established that [an]

unauthorized nighttime home searches are constitutionally invalid").  In light of

the broad consensus on this issue, this Court should find that Appellees violated

clearly established law and therefore were not entitled to immunity from Jones's

nighttime-search claim.[4]

---

[4] In *Yanez-Marquez v. Lynch*, the Fourth Circuit suggested that there was a "circuit split on whether the nighttime execution of a daytime warrant, without consent or exigent circumstances, is a Fourth Amendment violation."  2015 WL 3719105, at *33 n.22.  But that is incorrect.  The cited decisions from the Second, Sixth, and Eighth Circuits did not hold that the nighttime execution of a daytime warrant is constitutional, but addressed only violations of Fed. R. Crim. P. 41.  In two of those cases, the warrants at issue expressly *authorized* nighttime searches.  *United States v. Schoenheit*, 856 F.2d 74, 75 (8th Cir. 1988); *United States v. Searp*, 586

(footnote continued on next page)

The purpose of qualified immunity is to ensure that an officer will be held liable only if he has been "put . . . on notice that his conduct would be clearly unlawful." *Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). It is not credible to suggest that law enforcement officers such as Appellees lacked notice that they would be acting illegally if they ignored the specific terms of the search warrant. In other contexts, both the D.C. Circuit and the Fourth Circuit have recognized that "flagrant disregard" for the limitations in a warrant amounts to a Fourth Amendment violation. *See United States v. Heldt*, 668 F.2d 1238, 1259 (D.C. Cir. 1981); *United States v. Jones*, 31 F.3d 1304, 1314 (4th Cir. 1994). By flouting the magistrate's clear timing instructions, which were printed on the very search warrant they were executing, Appellees violated clearly established law.

---

(footnote continued from previous page)
F.2d 1117, 1119 (6th Cir. 1978). In *United States v. Burke*, 517 F.2d 377, 385-86 (2d Cir. 1975), the subject of nighttime searches arose only indirectly, in the context of a general discussion about Rule 41 violations. *Burke* did not address the nighttime execution of warrants expressly limited to daytime service. To Appellant's knowledge, there are no cases holding that nighttime execution of a daytime warrant passes Fourth Amendment scrutiny.

### D.     The Court Should Address the Fourth Amendment Question Before the Clear-Establishment Question

This Court has discretion to begin its analysis with either prong of the qualified-immunity inquiry. *Ashcroft v. al-Kidd*, 131 S. Ct. at 2080. It can start by deciding whether Appellees' conduct was prohibited by the Fourth Amendment, or it may begin by addressing whether Appellees violated clearly established law. For the reasons explained below, the Court should start with the Fourth Amendment question, and then move to the clear-establishment question.

Until relatively recently, the Supreme Court required lower courts considering qualified immunity claims to "first address the constitutional question, so as to promote 'the law's elaboration from case to case.'" *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Then, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court granted more flexibility to lower courts. Recognizing that it is sometimes "plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," the Court changed course and allowed lower courts to preserve "scarce judicial resources" by sometimes conducting the clear-establishment inquiry first. *Id.* at 236-237. Still, the Court has emphasized that "following the two-step sequence – defining constitutional rights and only then conferring immunity – is sometimes beneficial to clarify the legal standards governing public officials." *Camreta*, 131 S. Ct. at 2032.

- 37 -

In *Camreta*, the Court illustrated the danger of adhering to a "policy of avoidance":

> Consider a plausible but unsettled constitutional claim asserted against a government official in a suit for money damages. The court does not resolve the claim because the official has immunity. He thus persists in the challenged practice; he knows that he can avoid liability in any future damages action, because the law has still not been clearly established. Another plaintiff brings suit, and another court both awards immunity and bypasses the claim. And again, and again, and again. So the moment of decision does not arrive. Courts fail to clarify uncertain questions, fail to address novel claims, fail to give guidance to officials about how to comply with legal requirements.

131 S. Ct. at 2031.

The risks articulated by the *Camreta* court are relevant here. Jones presents a Fourth Amendment question that is both important and likely to recur. In *Pearson*, the Court granted increased flexibility because it recognized that some civil rights plaintiffs were presenting courts with isolated Fourth Amendment issues, thereby forcing them to engage in an "essentially academic exercise." 555 U.S. at 237. This is not a case of that nature, as evidenced by the tens of thousands of search warrants that law enforcement officers execute every year. For these reasons, this Court should address the Fourth Amendment question first.

Additionally, the Court should not employ a "policy of avoidance" in this case because the issue presented here is unlikely to be decided outside the context of a civil rights suit. The Supreme Court in *Camreta* recognized that the most fitting cases for potentially avoiding a constitutional issue and turning directly to

the clear-establishment prong are those where the "constitutional issue could arise in a case in which qualified immunity is unavailable," such as during a suppression hearing in a criminal proceeding; because, in those circumstances, there is a greater range of opportunities in subsequent cases to sort out the merits of the constitutional question, avoiding it in a qualified-immunity setting can make sense (assuming, even then, the judicial-economy needs mentioned in *Camreta*). 131 S. Ct. at 2031 n.5.

But the Court went on to observe that "some kinds of constitutional questions do not often come up in these alternative settings." *Id*. This case involves exactly that sort of constitutional question, as evidenced by the proceedings in Jones's own criminal case. Though Jones tried to raise the nighttime search issue in a suppression hearing before Judge Huvelle, the Judge declined to address it, explaining that even if Jones alleged a valid Fourth Amendment violation based on the timing of the search, "the remedy would not be suppression." Hearing Tr. at 11-12, Doc. 670-5 in *United States v. Jones*, No. 05-cr-386 (D.D.C. Aug. 10, 2012). In such a context, as the Supreme Court hinted, "following the two-step sequence – defining constitutional rights and only then [considering] immunity – is sometimes beneficial to clarify the legal standards governing public officials." *Camreta,* 131 S. Ct. at 2032. Given the extraordinary frequency with which nighttime searches are conducted, and the difficulty of

testing their constitutionality in other contexts, this Court should clarify the law by directly addressing the important and recurring constitutional issue that Jones presents.

## **<u>CONCLUSION</u>**

The District Court's dismissal of Claim V of Jones's amended complaint should be reversed and the case should be remanded for further proceedings.

June 29, 2015                          Respectfully submitted,

                                       /s/ Anthony F. Shelley
                                       Anthony F. Shelley
                                       Andrew T. Wise
                                       Kathleen T. Wach
                                       Miller & Chevalier Chartered
                                       655 Fifteenth St., NW, Suite 900
                                       Washington, DC 20005
                                       Telephone:  (202) 626-5924
                                       Facsimile:  (202) 626-5801
                                       Email:  ashelley@milchev.com
                                       Email:  awise@milchev.com
                                       Email:  kwach@milchev.com

                                       Arthur B. Spitzer
                                       American Civil Liberties Union of the
                                           Nation's Capital
                                       4301 Connecticut Ave., NW, Suite 434
                                       Washington, DC 20008
                                       Telephone:  (202) 457-0800, ext. 1004
                                       Facsimile:  (202) 457-0805
                                       Email:  artspitzer@aclu-nca.org

                                       *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 9,551 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

____ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

____ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

| | |
|---|---|
| _____June 29, 2015_____ | /s/ Anthony F. Shelley_____ |
| Date | Anthony F. Shelley |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2015, I electronically filed the foregoing

**BRIEF OF APPELLANT** with the Clerk of Court using the CM/ECF System,

which will send notice of such filing to the following registered CM/ECF users:

> R. Craig Lawrence
> Jeremy Simon
> U.S. Attorney's Office – Civil Division
> 555 Fourth Street NW
> Washington, DC 20530
> Email:  craig.lawrence@usdoj.gov
> Email:  jeremy.simon@usdoj.gov

I also certify that, on June 29, 2015, I will dispatch, within two business

days, by hand-delivery, the requisite EIGHT (8) copies of the **BRIEF OF**

**APPELLANT** to the Clerk of the United States Court of Appeals for the D.C.

Circuit.

> /s/ Anthony F. Shelley
> Anthony F. Shelley

## <u>SECOND CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2015, I electronically filed the foregoing

**CORRECTED BRIEF OF APPELLANT** with the Clerk of Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> R. Craig Lawrence
> Jeremy Simon
> U.S. Attorney's Office – Civil Division
> 555 Fourth Street NW
> Washington, DC 20530
> Email:  craig.lawrence@usdoj.gov
> Email:  jeremy.simon@usdoj.gov

I also certify that, on July 8, 2015, I will dispatch, within two business days,

by hand-delivery, the requisite EIGHT (8) copies of the **CORRECTED BRIEF**

**OF APPELLANT** to the Clerk of the United States Court of Appeals for the D.C.

Circuit.

/s/ Anthony F. Shelley
Anthony F. Shelley