**ORAL ARGUMENT SCHEDULED FOR MARCH 21, 2016**

No. 14-5257

(Consolidated with No. 15-5088)

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

ANTOINE JONES,
*Plaintiff-Appellant*

v.

STEVE KIRCHNER, D.C. MPD DETECTIVE, *et al.*,
*Defendants-Appellees*
_____

On Appeal from the United States District Court
for the District of Columbia (Judge Richard J. Leon)
_____

**REPLY BRIEF OF APPELLANT**

Arthur B. Spitzer
American Civil Liberties Union
  of the Nation's Capital
4301 Connecticut Ave. NW, Ste. 434
Washington, DC 20008
Telephone: 202-457-0800, ext. 1004
Facsimile: 202-457-0805
Email: artspitzer@aclu-nca.org

January 19, 2016

Anthony F. Shelley
  *Counsel of Record*
Andrew T. Wise
Kathleen T. Wach
Miller & Chevalier Chartered
655 Fifteenth St. NW, Ste. 900
Washington, DC 20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ........................................................................................3

I.    THE DISTRICT COURT ERRED IN DISMISSING JONES'S
      KNOCK-AND-ANNOUNCE CLAIM ...........................................3

      A.    The Knock-and-Announce Claim Was Alleged Against
            Specific Defendants...........................................................3

      B.    The Knock-and-Announce Claim Established a Plausible
            Entitlement to Relief .........................................................5

            The Court Should Reject Appellees' Statute-of-
            Limitations Argument ........................................................7

            1.    Appellees Did Not Properly Raise the Statute of
                  Limitations Below, and the Court Should Not
                  Consider It Here...........................................................7

            2.    Jones's Claim Is Not Time-Barred ............................9

                  a.    The District of Columbia's Tolling Rules
                        Apply Here..........................................................10

                  b.    The Limitations Period Was Tolled Due to
                        Jones's Incarceration .......................................14

II.   THE DISTRICT COURT ERRED IN DISMISSING JONES'S
      CLAIM THAT THE OFFICERS EXCEEDED THE SCOPE
      OF THE WARRANT BY TAKING 30 TO 40 BOXES OF
      MATERIAL....................................................................................16

III.  THE DISTRICT COURT ERRED IN DISMISSING JONES'S
      CLAIM THAT APPELLEES VIOLATED THE FOURTH
      AMENDMENT BY EXECUTING A DAYTIME WARRANT
      AT NIGHT.....................................................................................17

i

A.    Nighttime Execution of a Daytime Search Warrant
      Violates the Fourth Amendment .........................................................17

B.    Appellees Violated Clearly Established Law by
      Disregarding the Timing Restrictions in the Warrant ........................20

IV.   JONES'S CLAIMS ARE NOT BARRED BY ISSUE
      PRECLUSION ..............................................................................................23

V.    JONES'S CLAIMS ARE NOT BARRED UNDER *HECK* .........................26

CONCLUSION ..................................................................................................28

CERTIFICATE OF COMPLIANCE ................................................................*Post*

CERTIFICATE OF SERVICE ..........................................................................*Post*

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*,
   62 F.3d 1454 (D.C. Cir. 1995)........................................................12

*\*Aquisto v. Danbert*,
   165 F.3d 26, No. 97-1668, 1998 WL 661145
   (6th Cir. Sept. 1, 1998) ................................................................4

*Banner Health v. Sebelius*,
   905 F. Supp. 2d 174 (D.D.C. 2012)..............................................9

*Bd. of Regents of Univ. of N.Y. v. Tomanio*,
   446 U.S. 478 (1980)....................................................................10

*Berger v. AXA Network LLC*,
   459 F.3d 804 (7th Cir. 2006) .....................................................11

*Bivens v. Six Unknown Named*
   Agents, 403 U.S. 388 (1971) ...............................................10, 20

*Cameron v. MRDCC Inst.*,
   9 F.3d 1543 (4th Cir. 1993) .......................................................10

*Canfield v. Douglas Cty.*,
   619 F. App'x 774 (10th Cir. 2015) ............................................13

*Champion Int'l Corp. v. United Paperworkers Int'l Union*,
   779 F.2d 328 (6th Cir. 1985) .....................................................11

*Covey v. Assessor of Ohio Cty.*,
   777 F.3d 186 (4th Cir. 2015) .....................................................27

*Cutler v. Hayes*,
   818 F.2d 879 (D.C. Cir. 1987).....................................................24

*Dickerson v. United States*,
   530 U.S. 428 (2000)....................................................................18

*Earle v. D.C.*,
 707 F.3d 299 (D.C. Cir. 2012)..........................................................................10

*Easterling v. Moeller*,
 334 F. App'x 22 (7th Cir. 2009) .......................................................................27

*Florek v. Vill. of Mundelein*,
 No. 05 C 6402, 2010 WL 1335526 (N.D. Ill. Mar. 31, 2010), *aff'd*,
 649 F.3d 594 (7th Cir. 2011) ..............................................................................6

*Gallagher v. City of Winlock*,
 287 F. App'x 568 (9th Cir. 2008) .......................................................................5

*Gluck v. Unisys Corp.*,
 960 F.2d 1168 (3d Cir. 1992) ...........................................................................11

*Gooding v. United States*,
 416 U.S. 430 (1974)...................................................................................19, 20

*Hardin v. Straub*,
 490 U.S. 536 (1989)...................................................................................10, 12

*Haring v. Prosise*,
 462 U.S. 306 (1983).........................................................................................25

*Heck v. Humphrey*,
 512 U.S. 477 (1994).............................................................................15, 26, 27

*Hudson v. Michigan*,
 547 U.S. 586 (2006)............................................................................................5

*Int'l Union, United Plant Guard Workers of Am. v. Johnson Controls
 World Servs., Inc.*,
 100 F.3d 903 (11th Cir. 1996) .........................................................................11

*Johnson v. Watkins*,
 101 F.3d 792 (2d Cir. 1996) .............................................................................26

*In re Jones*,
 670 F.3d 265 (D.C. Cir. 2012)..........................................................................26

*K.H. ex. rel. v. Morgan*, 914 F.2d 846 (7th Cir. 1990) ............................................21

iv

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
    61 F.3d 608 (8th Cir. 1995) ...............................................................11

*Katz v. United States*,
    389 U.S. 347 (1967) .........................................................................21

*Kniffen v. Macomb Cty.*,
    No. 04-70497, 2006 WL 3205499 (E.D. Mich. Nov. 3, 2006) ...........4

*Knox v. Cook Cty. Sheriff's Police Dep't*,
    866 F.2d 905 (7th Cir. 1988) ...........................................................14

*Lewellen v. Morley*,
    875 F.2d 118 (7th Cir. 1989) ...........................................................10

*Linares v. Jones*,
    No. 04-0247, 2007 WL 1601725 (D.D.C. June 4, 2007) ..................15

*Lockett v. Ericson*,
    656 F.3d 892 (9th Cir. 2011) ...........................................................27

*Lopez v. City of Phoenix*,
    618 F. App'x 326 (9th Cir. 2015) .....................................................13

*Malone v. Corrections Corp. of America*,
    553 F.3d 540 (7th Cir. 2009) ...........................................................12

*Marmelshtein v. City of Southfield*,
    421 F. App'x 596 (6th Cir. 2011) .......................................................4

*Martin v. Dep't of Justice*,
    488 F.3d 446 (D.C. Cir. 2007) .........................................................25

*MBI Grp., Inc. v. Credit Foncier du Cameroun*,
    616 F.3d 568 (D.C. Cir. 2010) ...........................................................8

*Estate of Miller ex rel. Miller v. Hudson*,
    528 F. App'x 238 (3d Cir. 2013) ......................................................13

*Milton S. Kronheim & Co. v. D.C.*,
    91 F.3d 193 (D.C. Cir. 1996) ...........................................................25

*Navab-Safavi v. Broad. Bd. of Governors*,
  650 F. Supp. 2d 40 (D.D.C. 2009), *aff'd sub nom., Navab-Safavi v.*
  *Glassman,* 637 F.3d 311 (D.C. Cir. 2011) ........................................................ 21

*O'Rourke v. City of Norman*,
  875 F.2d 1465 (10th Cir. 1989) .................................................................. 17

*Ogunjobi-Yobo v. Gonzales*,
  171 F. App'x 863 (D.C. Cir. 2005) ............................................................... 7

*Parretti v. United States*,
  122 F.3d 758 (9th Cir. 1997) ..................................................................... 17

*Simpson v. D.C. Metro. Police Dep't*,
  789 F. Supp. 5 (D.D.C. 1992) .................................................................... 15

*Talarico v. Dunlap*,
  685 N.E.2d 325 (Ill. 1997) ....................................................................... 26

*United States v. Burch*,
  156 F.3d 1315 (D.C. Cir. 1998) ................................................................. 19

*United States v. Burke*,
  517 F.2d 377 (2d Cir. 1975) ..................................................................... 23

*United States v. Castle*,
  213 F. Supp. 52 (D.D.C. 1962) .................................................................. 18

*United States v. Jones*,
  Case No. 05-cr-386, (D.D.C. May 22, 2012) ................................. 14, 24, 25, 28

*United States v. Leichtnam*,
  948 F.2d 370 (7th Cir. 1991) ..................................................................... 5

*United States v. Levasseur*,
  699 F. Supp. 965 (D. Mass.1988), *rev'd in part on other grounds*,
  846 F.2d 786 (1st Cir. 1988) ..................................................................... 26

*United States v. Merritt*,
  293 F.2d 742 (3d Cir. 1961) ..................................................................... 19

*United States v. Schoenheit*,
  856 F.2d 74 (8th Cir. 1988) ...................................................................... 22

*United States v. Searp*,
   586 F.2d 1117 (6th Cir. 1978) .......................................................................22

*Wallace v. Kato*,
   549 U.S. 384 (2007)........................................................................................13

*Weakes v. FBI-MPD Safe Streets Task Force*,
   No. CIV.A. 05-0595, 2006 WL 212141 (D.D.C. Jan. 27, 2006) ......................15

*Williamson v. Cty. Montgomery*,
   605 F. App'x 457 (5th Cir. 2015) ....................................................................13

*Yanez-Marquez v. Lynch*,
   789 F.3d 434 (4th Cir. 2015) .....................................................................20, 22

*Youngbey v. March*,
   676 F.3d 1114 (D.C. Cir. 2012).......................................................................22

**Statutes**

U.S. Const. amend. IV .......................................... 17, 18, 20, 22, 26, 27

21 U.S.C. § 879...............................................................................17, 18

21 U.S.C. § 879..................................................................................18

42 U.S.C. § 1983 ......................................... 10, 11, 12, 13, 14, 21, 26, 27

D.C. Code § 12-302 ........................................................................10, 14

Md. Code Ann., Cts. & Jud. Proc. § 5-201 ............................................10

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014)..................................................13

Fed. R. Civ. P. 12 ...........................................................................6, 16

Fed. R. Crim. P. 41............................................................................18, 19, 22

*Cases upon which we chiefly rely are marked with an asterisk.

## SUMMARY OF ARGUMENT

Nothing in Appellees' brief undermines Jones's showing in his opening brief that the Court should reverse the District Court's dismissal of each of the three principal allegations in Claim V: (1) that Appellees illegally failed to knock and announce before entering his home; (2) that they illegally took 30 to 40 boxes of material beyond the scope of the relevant warrant; and (3) that they illegally entered his home at nighttime, when the warrant authorized entry only during the daytime.

On the first set of allegations, Appellees' accusation that the knock-and-announce claim fails to name individual defendants is belied by the amended complaint itself, which identifies by name each officer who is liable. Next, Appellees' assertion that the allegations fail to cross Rule 12(b)(6)'s plausibility threshold misses the mark, because it is at least plausible that Jones's failure to hear any knock and announcement was because there was none. And the dismissal of the knock-and-announce claim cannot be justified by the statute of limitations, given that Appellees never properly raised a limitations defense below and, in any event, the limitations period was tolled under D.C.'s tolling rules.

As to the amended complaint's allegations that Appellees exceeded the scope of the warrant by taking 30 to 40 boxes of material, this claim is – contrary to Appellees' protestations – sufficiently precise to satisfy Rule 12(b)(6)'s

standards, without any specific delineation of what was in the boxes. Appellees were on notice from the pleading that Jones believes *everything* in the boxes was beyond the scope of the warrant and can prepare their factual and legal defense accordingly.

With respect to the allegations that Appellees violated the time restrictions on the warrant, and the District Court's invocation of qualified immunity to dismiss the allegations, Appellees set up a straw man that Jones supposedly seeks a ruling that all nighttime searches are unlawful unless specifically authorized by the warrant. To the contrary, Jones contends that nighttime searches are illegal *when the warrant instructs a daytime search*, and clearly established law supports that contention.

Appellees also press two other arguments for dismissal of some or all of Claim V's allegations:  issue preclusion and the *Heck* bar. But Appellees did not, in the District Court, properly raise issue preclusion based on earlier suppression rulings in the criminal proceedings; in any event, those suppression rulings cannot support preclusion because Jones had no incentive to appeal them and thus fully litigate them. Nor does *Heck* apply, because by its own terms *Heck* is inapplicable to § 1983 cases challenging illegally obtained evidence and because a guilty plea is not necessarily called into question by a civil holding regarding the legality of evidence collection.

# **ARGUMENT**

I. **THE DISTRICT COURT ERRED IN DISMISSING JONES'S KNOCK-AND-ANNOUNCE CLAIM**

    A. **The Knock-and-Announce Claim Was Alleged Against Specific Defendants**

Appellees argue that Jones's knock-and-announce claim was insufficiently pled because it alleged "group conduct" and "fails to identify any individual's specific conduct regarding entry." Appellees' Br. 20. They cite cases for the rule that generic references to "defendants" are insufficient. *Id*. at 19.

Jones, however, alleged that *each* individual officer, identified by name, violated the Constitution by "entering into the Moore Street Residence . . . without knocking and announcing their presence." JA45. Jones did not assert Claim V against all "defendants," but only against the FBI and Metropolitan Police Department officers who entered his home, and by specific name; indeed, Appellees know this, because they are careful to emphasize that the appeal is against only *some* defendants, not all – *i.e.*, those specifically named in Claim V. *See* Appellees' Br. 11 n.4 & 18 n.5; *see also* Appellees' Br., Cert. as to Parties, Rulings, and Related Cases. Each of the named individuals is alleged to have failed to knock and announce and then to have entered. Appellees seem to think Jones had to identify the "first" officer who entered, as if only his or her failure to knock and announce and then enter would constitute the legal violation.

Appellees' Br. 15.  But the law is not so limited, and Appellees cite no precedent to the effect that only the leader of the pack is liable.  Given that a knock-and-announce violation entails (1) the failure to knock and announce and (2) subsequent entry, and Jones has alleged both as to each defendant specifically named in Claim V, his allegations sufficiently plead each element of the claim against each defendant.

Appellees' reliance on *Marmelshtein v. City of Southfield*, 421 F. App'x 596 (6th Cir. 2011), is misguided.  That case was decided only after discovery had identified the particular officer who claimed to have knocked and announced and whose conduct was therefore at issue.  *See id.* at 602-03.  Although the dismissal of the other officers in that unreported case was unexplained and incorrect, even that case does not support the pre-discovery dismissal of all defendants, including an as-yet-unidentified defendant who might claim to have knocked and announced. In fact, the same Sixth Circuit has held that all members of a search team can be held liable for a knock-and-announce violation even if they are not the first officer through the door.  *See Aquisto v. Danbert*, 165 F.3d 26, No. 97-1668, 1998 WL 661145, at *4 (6th Cir. Sept. 1, 1998) ("Our caselaw leaves no room for doubt that [the defendant officer] and the other members of the entry team violated [the plaintiff]'s rights if the team did not knock and announce its presence."); *Kniffen v. Macomb Cty.*, No. 04-70497, 2006 WL 3205499, at *8 (E.D. Mich. Nov. 3, 2006)

(following *Aquisto*'s holding that "officers who do not actually breach the door, but who participate after entry, can be liable for a knock and announce violation").[1]

B.    **The Knock-and-Announce Claim Established a Plausible Entitlement to Relief**

Appellees are also wrong in arguing that Jones did not allege a plausible claim for relief.  They reason (as the District Court did) that because Jones was upstairs when the officers entered his home, the only plausible interpretation of the facts is that the officers knocked and announced, but Jones did not hear them. Appellees' Br. 21-22.  Of course, an equally if not more plausible explanation is that Jones did not hear the officers knock or announce because they failed to do so, or did so too softly to be heard.[2]  Various facts, such as the distance between Jones's bedroom and the front door, the layout and size of the home, and the duration and volume of an officer's knock and announcement (if one occurred),

---

[1] Even if only certain members of the search team can be held liable for the knock-and-announce violation, the case should proceed to discovery so that those defendants can be identified.  *See Gallagher v. City of Winlock*, 287 F. App'x 568, 577 (9th Cir. 2008) ("Without deposing the defendants, the plaintiffs have not had a fair opportunity to sort out the roles of the various officers.").

[2] The purposes of the knock and announce rule are:  (1) to avoid violence that might be provoked in supposed self-defense by a surprised resident; (2) to protect property by allowing a resident to open the door for officers before they destroy it; and (3) to protect "those elements of privacy and dignity that can be destroyed by sudden entrance," by, for example, allowing residents to put on clothes or get out of bed.  *Hudson v. Michigan*, 547 U.S. 586, 594 (2006).  Officers who fail to knock and announce loudly enough or to wait long enough to accomplish these objectives do not fulfill the requirement.  *See generally United States v. Leichtnam*, 948 F.2d 370, 374 (7th Cir. 1991).

could guide a fact-finder's resolution of that dispute. So too could Jones's

allegation that Appellees entered with an "unauthorized key" – a specific fact

making it even more plausible that Appellees could, and did, surreptitiously enter

without appropriate warning. JA33.

But no fact-finding occurred here, except the district court's improper

determination that Appellees knocked and Jones failed to hear them. Even on

summary judgment, courts have refused to rule against plaintiffs similar to Jones,

when there are alternative explanations for a plaintiff's allegation of no knock and

announcement. *See Florek v. Vill. of Mundelein*, No. 05 C 6402, 2010 WL

1335526, at *6 (N.D. Ill. Mar. 31, 2010), *aff'd*, 649 F.3d 594 (7th Cir. 2011)

("Truly viewing the evidence in the light most favorable to Plaintiff, as this Court

must, there is a disputed issue of fact as to whether Defendants knocked and

announced before breaking her door down. Plaintiff's testimony that she heard

nothing before her door was destroyed is not a failure to offer competent evidence.

To the contrary, a reasonable trier of fact could infer that she heard nothing

because the officers did not knock and announce their presence at all."). Having

dismissed Jones's claim even in light of factual disputes, and improperly failing to

assume Jones's factual scenario, the District Court violated Rule 12(b)(6).

Appellees further argue that Jones's claim was properly dismissed because

he "cannot refute" the testimony of an officer in Jones's *criminal* case that he

knocked and announced before the team entered.  Appellees' Br. 22 n.7.  However, whether one witness can or cannot "refute" the testimony of another requires fact-finding and probably a finding of credibility, both improper on a motion to dismiss.

C.    **The Court Should Reject Appellees' Statute-of-Limitations Argument**

Appellees argue that Jones's knock-and-announce claim is time-barred. They coyly say that the "District Court did not find it necessary to reach the issue," and then still offer it as an independent basis on which to affirm the decision below.  Appellees' Br. 24.  But the District Court did not address the statute of limitations because Appellees did not properly raise it.  For the same reason, this Court also should not address it.  If this Court does reach the issue, the statute of limitations is no barrier, because the limitations period for the knock-and-announce claim was tolled by Jones's incarceration.

1.    **Appellees Did Not Properly Raise the Statute of Limitations Below, and the Court Should Not Consider It Here**

This Court "may affirm a judgment . . . on any ground *that is properly raised below*, even if the district court did not rely on it."  *Ogunjobi-Yobo v. Gonzales*, 171 F. App'x 863, 864 (D.C. Cir. 2005) (emphasis added).  Appellees' statute-of-limitations argument was not "properly raised below," because they never argued, in their motion to dismiss, that Jones's knock-and-announce claim was time-barred.  Appellees did there raise a statute-of-limitations argument, but as

to different claims (and different defendants).  *See* D. Ct. Dkt. No. 37 at 26-28.

Only at the end of their reply memorandum did they off-handedly assert that the

knock-and-announce claim was time-barred.  *See* D. Ct. Dkt. No. 44 at 22.  An

argument made first in a litigant's reply is not "properly raised" and cannot serve

as grounds for affirmance on appeal when the lower court did not address it.  *See*

*MBI Grp., Inc. v. Credit Foncier du Cameroun*, 616 F.3d 568, 575 (D.C. Cir.

2010) ("district courts, like this court, generally deem arguments made only in

reply briefs to be forfeited"; "reply briefs *reply* to arguments made in the response

brief – they do not provide the moving party with a new opportunity to present yet

another issue for the court's consideration.") (internal quotation marks and

citations omitted).

Appellees say their original motion to dismiss posited that "any claim . . .

Jones sought to raise in this action that had not previously been raised in his 2007

lawsuits was facially time-barred."  Appellees' Br. 28.  For this, they cite to pages

26-28 and 31-32 of their motion to dismiss.  *Id*. at 28-29.  But an examination of

these pages shows that Appellees made no such argument as to "any claim that

Jones sought to raise."  Their statute-of-limitations arguments on pages 26-28 were

limited to "the claims against the . . . ICE agent defendants" and the searches of the

"Summit Circle apartment and Hampton Park warehouse."  D. Ct. Dkt. No. 37 at

26.  The arguments on pages 31-32 dealt with FBI SWAT team members who

searched Jones's nightclub.  *Id*. at 31-32.  Those defendants and those searches are not at issue here, and Appellees made no statute-of-limitations arguments as to Jones's knock-and-announce claim until their few sentences at the end of their reply brief.

In the alternative, Appellees argue that, even if their argument was not made until their reply motion, Jones's should be "preclude[d]" from arguing that the issue is not properly before this Court because Jones did not ask the District Court for permission to file a surreply.  Appellees' Br. 29.  This cannot possibly be the law.  *Every* litigant who faces a newly minted argument in a reply could request a surreply.  If the failure to do so meant that the newly raised arguments could be considered, that exception would swallow the rule.  It would also fly in the face of the District Court's well-established policy disfavoring surreplies.  *See Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).

### 2.    **Jones's Claim Is Not Time-Barred**

Should this Court decide to reach the statute-of-limitations issue, it should hold that Jones's knock-and-announce claim was not time-barred.  Jones's claim accrued on October 24, 2005, the day Appellees searched his home and arrested him.  Appellees are correct in noting that the applicable limitations period is three years (*see* Appellees' Br. 24; *see also infra* n.3), but they are wrong that Jones was out of time when he filed this lawsuit.  Under District of Columbia law (applicable

- 9 -

here), incarceration tolls the limitations period, *see* D.C. Code § 12-302(a)(3), which means the clock has yet to begin running for Jones, who has been imprisoned since the day of the search.  Recognizing this, Appellees – wrongly – urge the Court to apply Maryland tolling rules, which do not toll the limitations period during a plaintiff's incarceration.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-201(c).[3]

         a.      **The District of Columbia's Tolling Rules Apply Here**

"Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983."  *Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).  Therefore, "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.'"  *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quoting *Tomanio*, 446 U.S. at 484).  The same is true for *Bivens* actions.  *See Lewellen v. Morley*, 875 F.2d 118, 120 (7th Cir. 1989).

Appellees contend that the court must apply Maryland law because "Jones's *Bivens* claims are based on federal question jurisdiction, and not diversity

---

[3] Under both D.C. and Maryland law, the limitations period for § 1983 and *Bivens* claims such as Jones's is three years.  *Earle v. D.C.*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citing D.C. Stat. § 12-301(8), which applies a three-year limitations period to all claims not otherwise specified in the statute); *Cameron v. MRDCC Inst.*, 9 F.3d 1543 (4th Cir. 1993) (applying Maryland's general three-year statute of limitations).  Thus, the laws of the two jurisdictions differ only with respect to their tolling rules.

jurisdiction." Appellees' Br. at 28 n.10. This misstates the law. To be sure, when a court exercises federal question jurisdiction, the limitations period and tolling rules are ultimately governed by federal law. But when no federal statute specifies a limitations period or tolling rules (as in § 1983/*Bivens* cases), the court must borrow state law even in a federal-question case. And in order to determine "the most appropriate state limitations period," the court's "task . . . is to fashion a *federal* choice of law rule." *Berger v. AXA Network LLC*, 459 F.3d 804, 809-10 (7th Cir. 2006); *accord Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992). Thus, federal choice-of-law principles must guide this court's choice between D.C. and Maryland law.

　　In federal question cases like this one, the courts of appeals are relatively uniform on the applicable choice-of law inquiry: where, as here, "Congress has provided no limitations period for a federal claim[,] . . . a court must borrow the applicable limitations period and tolling rules *from the state in which it sits,* unless those rules are inconsistent with federal policy." *Int'l Union, United Plant Guard Workers of Am. v. Johnson Controls World Servs., Inc.*, 100 F.3d 903, 905 (11th Cir. 1996) (internal quotation marks omitted); *accord Champion Int'l Corp. v. United Paperworkers Int'l Union*, 779 F.2d 328, 333, 334 (6th Cir. 1985); *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 611 (8th Cir. 1995); *Berger*, 459 F.3d at 813.

Under that rule, the District of Columbia's limitations period and tolling rules must be applied here. Because the laws of the two jurisdictions differ only with respect to their tolling rules, the only possible rationale for deviating from the default choice of the forum's law would be that D.C. tolling rules somehow undermine the purposes of § 1983 and *Bivens*. But that position was considered and rejected by the Supreme Court in *Hardin v. Straub*, 490 U.S. 536 (1989). There, the Court addressed a Michigan statute that tolled the limitations period due to incarceration. The Sixth Circuit had refused to apply the tolling provision in a § 1983 action, finding it inconsistent with the federal policies behind the law. *Id.* at 542. The Supreme Court disagreed and reversed, finding that by tolling the limitations period due to incarceration, the statute enhanced inmates' abilities to file lawsuits in order to vindicate their rights and made it less likely that officials would escape liability, thereby furthering § 1983's compensation and deterrence goals. *Id.* at 543. Therefore, federal choice-of-law principles mandate application of D.C. tolling rules in this case.[4]

---

[4] One subtly different variation on the choice-of-law inquiry in federal question cases occurred in *Malone v. Corrections Corp. of America*, 553 F.3d 540, 542-43 (7th Cir. 2009), in which the Seventh Circuit held that in § 1983 actions federal courts must look to the forum state's *choice-of-law rules* to determine which state's statute of limitations applies. Because D.C. treats statutes of limitations as procedural in nature, D.C. law mandates the use of D.C.'s own limitations periods and tolling rules in all D.C. cases. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1458 (D.C. Cir. 1995). Consequently, under *Malone* too, D.C.'s tolling rules would apply.

Appellees cite *Wallace v. Kato*, 549 U.S. 384, 394 (2007), for the proposition that the Court must apply the law of the state in which the cause of action arose, which they say is Maryland. Appellees' Br. 28 n.10. In *Wallace*, the court did not face a choice between applying the law of the forum state or the law of the state where the claim arose, because only one state was involved. *Wallace*, 549 U.S. at 384. Had the Court in *Wallace* applied traditional choice-of-law principles for a federal question case, the result would have been the same: Illinois, where the claim arose, because that was *the forum state*. *Wallace* therefore is consistent with application of D.C. tolling rules in this case, as D.C. is the forum state here. Indeed, courts regularly cite *Wallace* for the proposition that "[i]n § 1983 actions we apply the forum state's statute of limitations for personal-injury claims and generally apply the forum state's tolling rules." *Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015) (citing *Wallace* 549 U.S. at 387); *accord Williamson v. Cty. Montgomery*, 605 F. App'x 457, 458 (5th Cir. 2015); *Lopez v. City of Phoenix*, 618 F. App'x 326, 327 (9th Cir. 2015); *Estate of Miller ex rel. Miller v. Hudson*, 528 F. App'x 238, 240 (3d Cir. 2013).[5]

---

[5] The Supreme Court's passing statement in *Wallace* (549 U.S. at 387) that courts "look[] to the law of the state in which the cause of action arose" very well could have been a facial reference to where *the suit* arose (*i.e.*, the forum state), as it is not uncommon to use "cause of action" and "lawsuit" synonymously. *See Black's Law Dictionary* 266-67 (10th ed. 2014) (noting one definition of "cause of action" as "[l]oosely, a lawsuit").

b.    **The Limitations Period Was Tolled Due to Jones's Incarceration**

Under D.C. Code § 12-302(a)(3), "when a person entitled to maintain an action is, at the time the right of action accrues: . . . imprisoned – he . . . may bring action within the time limited after the disability is removed."  Jones was arrested at the very outset of the search of his home.  *See* Tr. of Jury Trial at 43-44, *United States v. Jones,* No. 05-cr-386 (D.D.C. Mar. 28, 2013), ECF No. 739 (testimony of Special Agent Naugle that immediately upon entering the home, he saw Jones standing naked at the top of the stairs, chased him into his bedroom, and handcuffed him).  Jones has remained imprisoned since that day.  Appellees do not dispute that for purposes of the D.C. tolling rule, Jones was incarcerated at the time of his arrest.  Appellees' Br. 28 n.10.  But they argue that the statute of limitations was not tolled because the knock-and-announce violation occurred before – seemingly seconds before – Jones was handcuffed.  *Id*.

Appellees' "gotcha" argument is not well-taken.  Courts applying D.C.'s tolling rule and similarly-worded tolling provisions have not hesitated to conclude that when an improper use of force or illegal search occurred contemporaneously with (though moments before) an arrest, the limitations clock for related § 1983 claims was stopped at the moment of arrest.  *See Knox v. Cook Cty. Sheriff's Police Dep't*, 866 F.2d 905, 906-08 (7th Cir. 1988) (deciding, in case involving plaintiff's § 1983 lawsuit alleging that officers obtained a search warrant based on

- 14 -

improper evidence, that "upon execution of the search warrant, Knox was arrested and imprisoned where he has remained ever since. Under these facts, Knox's claim is deemed to have accrued while he was imprisoned. The statute of limitations is tolled during this time, and his original complaint therefore timely filed."); *Simpson v. D.C. Metro. Police Dep't*, 789 F. Supp. 5, 6-8 (D.D.C. 1992) (limitations period was tolled due to incarceration under § 12-302(a)(3) for § 1983 plaintiff who alleged that officers conducting drug raid "entered [his apartment] unlawfully, beat him, and *then* arrested him on false charges") (emphasis added); *accord Weakes v. FBI-MPD Safe Streets Task Force,* No. CIV.A. 05-0595, 2006 WL 212141, at *1 & n.3 (D.D.C. Jan. 27, 2006); *Linares v. Jones*, No. 04-0247, 2007 WL 1601725, at *1, *4 (D.D.C. June 4, 2007). Any other conclusion would be unreasonable in light of the obvious purpose of the tolling rule, which is to freeze the limitations period for those whose ability to file a lawsuit is inhibited by incarceration.[6]

---

[6] Appellees apparently thought that Jones would argue that his knock-and-announce claim was also tolled under the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994). Appellees' Br. 25-27. Jones makes no such argument here, but notes that the limitations periods for his other claims (regarding the scope of the warrant and the nighttime search) *were* tolled under *Heck.* Appellees have not argued that these other claims are time-barred.

II.   **THE DISTRICT COURT ERRED IN DISMISSING JONES'S CLAIM THAT THE OFFICERS EXCEEDED THE SCOPE OF THE WARRANT BY TAKING 30 TO 40 BOXES OF MATERIAL**

Contrary to Appellees' interpretation, Jones's point in his opening brief was not that he was completely unaware of what officers took from his home – only that it would have been impractical and unnecessary (under *Iqbal*) for him to list *each* item contained in those 30-40 boxes and cross-reference each item against the descriptions on the 10-bullet-point warrant attachment.  Appellees stress that even an item not explicitly listed on a warrant attachment can be lawfully seized pursuant to a warrant (Appellees' Br. at 30), but this only strengthens Jones's point that he is entitled to proceed past the motion-to-dismiss stage.  It may be that Appellees have defenses – factual or legal – to his allegation that they took unauthorized items from his home; nonetheless, the existence of those defenses does not mean his *pleading* is deficient.

Rather, his pleading is quite straightforward and, if assumed to be true (consistent with Rule 12(b)(6) standards), winning:  he alleged that Appellees entered his house, took 30-40 boxes of materials, and that *all* boxes were beyond the scope of the warrant.  JA38, JA46.  What Jones knew, and what he alleged, was that Appellees found nothing of evidentiary value in the house (JA38), meaning that, in his judgment, *everything* seized fell outside the scope of the warrant.  Jones explained that Appellees were searching for evidence of narcotics violations,

JA35), "found no evidence of any crime" in his home (JA38), and yet took 30-40 boxes of his personal property.  The claim gives Appellees notice that Jones plans to challenge the legality of every item taken, and Appellees can begin their defense preparation accordingly.  A listing of each item in each box would give Appellees no greater notice of the claim, since Jones has alleged already that each item is beyond the scope of the warrant.

III.  **THE DISTRICT COURT ERRED IN DISMISSING JONES'S CLAIM THAT APPELLEES VIOLATED THE FOURTH AMENDMENT BY EXECUTING A DAYTIME WARRANT AT NIGHT**

A.  **Nighttime Execution of a Daytime Search Warrant Violates the Fourth Amendment**

In executing the search warrant at Jones's home, Appellees chose to enter at 4:45 a.m., despite the issuing magistrate's clear instructions, on the face of the warrant, directing them to search only between 6:00 a.m. and 10:00 p.m.  In arguing that they did not violate the Constitution by executing a daytime warrant at night, Appellees suggest that Congress has the authority to reshape the Fourth Amendment and that 21 U.S.C. § 879 prevents magistrates from assessing the reasonableness of nighttime drug searches.  Appellees' Br. 36.  But § 879 does no such thing, nor could it, because a magistrate's power to judge the reasonableness of a proposed search is rooted in the Fourth Amendment (*see O'Rourke v. City of Norman*, 875 F.2d 1465, 1474 (10th Cir. 1989)), and "Congress has no power to modify the Fourth Amendment by legislative action."  *Parretti v. United States*,

122 F.3d 758, 774 (9th Cir. 1997); *see Dickerson v. United States*, 530 U.S. 428, 437 (2000); *see also* Appellants' Br. 35.

Appellees focus most of their discussion on the distinction between Fed. R. Crim. P. 41 and § 879 – a distinction that has no relevance here.  Rule 41 requires officers to serve warrants during the daytime "unless the judge for good cause expressly authorizes execution at another time."  Fed. R. Crim. P. 41(e)(2)(A)(i). Hence, under Rule 41, if an affiant cannot demonstrate "good cause" for a nighttime search, the search must be conducted during the daytime.  In the drug context, § 879 removes the requirement of a "good cause" showing, leaving magistrates free to issue nighttime search warrants, provided, of course, that they are satisfied that such searches would be reasonable.  If a magistrate finds that a search would be unreasonable if conducted at night, he is empowered by the Fourth Amendment to restrict the warrant's service to daytime hours, as was the case here.  As one court in this Circuit summarized what has long been the rule, § 879 "enlarges the power to issue a search warrant for nighttime service, but it does not permit nighttime service if the warrant was issued only for daytime service." *United States v. Castle*, 213 F. Supp. 52, 53 (D.D.C. 1962) (applying § 879's predecessor).

Appellees attack a series of straw men in an attempt to ignore the core constitutional issue.  For example, Appellees assert that "the weight of authority

establishes that nighttime [drug] searches are permissible without any heightened showing." Appellees' Br. 34. But Jones does not argue that the heightened "good cause" showing required under Rule 41 is applicable to drug searches; he argues that when a magistrate decides that a nighttime search (whether for drugs or anything else) would be unreasonable and therefore instructs the officers to search only during the daytime, that instruction is binding as a matter of constitutional law. Appellees further misconstrue Jones's argument by describing *United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998), as "involv[ing] an analogous situation to that presented here." Appellees' Br. 35. *Burch* is not analogous, because as Appellees' themselves explain, the case involved a warrant that was *silent* as to whether nighttime service would be appropriate. *Id*.

The cases relevant here are those involving search warrants that explicitly instruct officers to search during the daytime. Jones has cited many such cases, including *United States v. Merritt*, 293 F.2d 742 (3d Cir. 1961), which rejected precisely the argument Appellees' make here – that magistrates cannot restrict the timing of drug searches. Appellees suggest, without support or analysis, that *Merritt* is of "dubious validity" in light of the Supreme Court's decision in *Gooding v. United States*, 416 U.S. 430 (1974); they ignore the fact that *Gooding* holds only that Rule 41's requirement of a "special showing" of good cause for a nighttime search does not apply to drug searches and, therefore, that a nighttime

drug search where the warrant said "'at any time in the day *or night*'" is not problematic. *Id*. at 458, 459 (quoting warrant) (emphasis added).

Next, Appellees insist they were free to ignore the warrant's timing restriction because a warrant is valid so long as it is issued by a neutral and detached magistrate and satisfies the probable cause and particularity requirements. Appellees' Br. 36-37. But Jones does not argue that the warrant to search his home was invalid, only that Appellees violated the terms of the warrant. As the Fourth Circuit put it, a case such as this "involves a valid warrant that was invalidly executed at night." *Yanez-Marquez v. Lynch*, 789 F.3d 434, 468 n.21 (4th Cir. 2015). And it has long been the rule that a warrant is invalidly executed – and thus that a search is unreasonable under the Fourth Amendment – when an officer violates its terms. "[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant." *Bivens v. Six Unknown Named* Agents, 403 U.S. 388, 394-95 n.7 (1971); *see also* Appellants' Br. 24.

### B. Appellees Violated Clearly Established Law by Disregarding the Timing Restrictions in the Warrant

In arguing that they are entitled to qualified immunity, Appellees point to Jones's supposed "concession" that, at the time his home was searched, no Fourth Circuit or D.C. Circuit cases had been decided involving the "precise facts at issue here," and they claim that this is "dispositive" of Jones's nighttime search claim.

Appellees' Br. 34-35 n.12.  However, it "cannot be right" that "to survive a motion to dismiss a suit on grounds of immunity the plaintiff must be able to point to a previous case that differs only trivially from his case," for "[t]he easiest cases don't even arise.  There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances."  *K.H. ex. rel. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990).  For "'elementary'" constitutional violations, "'the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with well-recognized constitutional principles.'"  *Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 63 (D.D.C. 2009), *aff'd sub nom., Navab-Safavi v. Glassman,* 637 F.3d 311 (D.C. Cir. 2011) (quoting *Eberhardt v. O'Malley*, 17 F.3d 1023, 1028 (7th Cir. 1994)).

Here, at least since *Bivens* (*see supra* p. 20), and likely well before then (*see* Appellants' Br. 28, 32-33 (citing pre-1971 cases)), Appellees were on notice of the well-established constitutional principle that, in conducting a search, they must abide by the terms of the search warrant.  By flouting the magistrate's timing restriction, they therefore violated clearly established law, conducting essentially a warrantless search.  *See Katz v. United States*, 389 U.S. 347, 357 (1967) ("searches conducted outside the judicial process, without prior approval by judge or

magistrate, are *per se* unreasonable under the Fourth Amendment"); *Yanez-Marquez*, 789 F.3d 468 n.21 (4th Cir. 2015) ("the nighttime search here rendered the search itself warrantless because the magistrate judge's reasonableness finding was premised on a daytime search").  The well-settled principle that a search is unreasonable under the Fourth Amendment when it violates a warrant's terms, plus the legion of appellate decisions holding precisely that it is illegal to conduct a nighttime search when the warrant says daytime, provides more than a "consensus of persuasive authority" to place Appellees on notice that their 4:45 a.m. search – based on a warrant that said 6:00 a.m. to 10 p.m. – was illegal.  *Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012).

Contrary to the Fourth Circuit's statement in a footnote in *Yanez-Marquez*, there is no "circuit split" on this question.  789 F.3d at 468 n.22.  No federal court has ever held that nighttime service of a daytime-only warrant passes Fourth Amendment scrutiny.  The Fourth Circuit mistakenly identified a circuit split by misinterpreting three federal appellate cases.  *Id.* at 468.  Two of the cases involved warrants that expressly *authorized* nighttime service.  *United States v. Schoenheit,* 856 F.2d 74, 75 (8th Cir. 1988) ("the warrant[] authoriz[ed] a search by day or night"); *United States v. Searp*, 586 F.2d 1117, 1119 (6th Cir. 1978) ("A warrant was issued at 11:27 p.m. . . . and commanded an 'immediate' search").  The third case involved three claimed Rule 41 violations, none of which related to time of

service, much less the nighttime execution of a daytime warrant. *United States v. Burke*, 517 F.2d 377, 381-82 (2d Cir. 1975).

## IV.  JONES'S CLAIMS ARE NOT BARRED BY ISSUE PRECLUSION

Appellees insist that Jones is precluded from bringing claims regarding the scope of the warrant and the timing of the search because he purportedly already raised those issues in a motion to suppress in his criminal case.[7]  Appellees' Br. 41. This argument too was never reached by the District court, again because it was never raised in Appellees' motion to dismiss below – instead, raised, at best, in their reply brief.  In their motion to dismiss, Appellees raised collateral estoppel as to Claim V based only on findings in *civil* cases filed by Jones's family members. D. Ct. ECF 37 at 32-34.  Having failed properly to raise issue preclusion below, Appellees cannot raise it here.  More generally, this case would be a particularly inappropriate one in which to consider an issue-preclusion argument for the first time on appeal, given the voluminous transcripts and filings through which the Court would need to navigate in the first instance.  That exercise would be necessary in order for the Court to determine whether Jones had a "'full and fair opportunity to litigate'" the relevant issues and whether the issues were "'necessarily determined'" during the prior proceeding, both of which are

---

[7] Appellees do not argue that Jones's knock-and-announce claim is precluded, as that claim was never raised in Jones's criminal case.

requirements for issue preclusion. *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987) (quoting *Montana v. United States*, 440 U.S. 147 (1979)).

Should the Court reach the merits of the argument, it should reject issue preclusion. Jones raised the scope of the warrant and the timing of the search in his criminal case only in a motion for reconsideration of the denial of his earlier motion to suppress (Motion for Reconsideration, *United States v. Jones,* Case No. 05-cr-386, (D.D.C. May 22, 2012), ECF No. 619), and Judge Huvelle denied that motion without holding an evidentiary hearing or issuing a written opinion. *Id*., ECF No. 670-5 at 10-12, 14. Jones then filed another motion for reconsideration (*id.*, ECF No. 688) that was denied, again without an evidentiary hearing or a written opinion. *Id*., Minute Entry dated Feb. 19, 2013. With regard to the nighttime search violation, Judge Huvelle orally explained her ruling against suppression on the ground that suppression was not an available remedy for such a violation (*id.*, ECF No. 670-5 at 11-12), and the timing of the search was therefore "legally irrelevant" for purposes of the suppression motion; she added that, to the extent she needed to make factual findings, she was finding that the search occurred within the warrant's terms. Tr. of Proceedings Held Feb. 19, 2013, ECF 780 at 4. With regard to the scope of the warrant, it appears Judge Huvelle never mentioned the issue in any proceedings. Without further investigation, this Court,

at a minimum, cannot pinpoint exactly what was fully and fairly litigated and

necessarily decided by these suppression rulings.

Furthermore, whatever their scope, the suppression determinations cannot be

given preclusive effect here because – in all events – the application of preclusion

would "work a basic unfairness" to Jones.  *Martin v. Dep't of Justice*, 488 F.3d

446, 454 (D.C. Cir. 2007).  "[A]mong the most critical guarantees of fairness in

applying collateral estoppel is the guarantee that the party sought to be estopped

had not only a full and fair opportunity but an adequate incentive to litigate to the

hilt the issues in question."  *Haring v. Prosise*, 462 U.S. 306, 311 (1983) (internal

quotation marks and citations omitted); *accord Milton S. Kronheim & Co. v. D.C.*,

91 F.3d 193, 197 (D.C. Cir. 1996).  Here, Jones did not have an "adequate

incentive to litigate" fully the issues presented in his suppression motions because

his guilty plea removed any incentive (or for that matter ability) to appeal.  Indeed,

it would have been meaningless for him to appeal the suppression rulings, because

in negotiating a favorable plea agreement he acknowledged that the government

possessed ample evidence against him that had *not* been seized from his Moore

Street residence.  *See* Stmt. of Facts in Supp. of Guilty Plea, *United States v. Jones,*

Case No. 05-cr-386 (D.D.C. May 1, 2013), ECF No. 750 (mentioning 97 kilograms

of cocaine seized from a Fort Washington, Maryland house).  In analogous

circumstances where there was little incentive to appeal, courts have refused to

give preclusive effect to suppression rulings. *E.g.*, *Johnson v. Watkins*, 101 F.3d 792, 796 (2d Cir. 1996); *United States v. Levasseur*, 699 F. Supp. 965, 981 (D. Mass.1988), *rev'd in part on other grounds*, 846 F.2d 786 (1st Cir. 1988); *see generally Talarico v. Dunlap*, 685 N.E.2d 325, 332 (Ill. 1997) (discussing how criminal defendants may lack an incentive to litigate if negotiating a guilty plea).

## V.    JONES'S CLAIMS ARE NOT BARRED UNDER *HECK*

Appellees' final argument that Jones's claims are barred under the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), is meritless. *Heck* itself makes clear that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Id.* at 487 n.7. The Court reasoned that, "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* (citations omitted)  This Court already suggested, in a prior appeal of one of Jones's other civil suits raising some of the same allegations as here, that this language in *Heck* should prevent his criminal conviction (then reversed, but now transformed into a guilty plea) from barring a § 1983 action based on Fourth Amendment violations. *In re Jones*, 670 F.3d 265, 267 (D.C. Cir. 2012).

Just as important, none of Jones's allegations in Claim V, if successful, would imply – not just necessarily, but at all – that Jones's conviction or sentence was unlawful, the key inquiry under *Heck*.  Success on his Fourth Amendment claims that evidence from the search of his home was unlawfully seized could not undermine Jones's conviction or sentence because he pled guilty.  Courts regularly have held that, when a criminal defendant pleads guilty, a subsequent § 1983 suit seeking damages for unlawful search and seizure of evidence cannot impugn the validity of his conviction, because the conviction rests on the plea itself, not on any particular evidence (whether seized legally or illegally).  *See Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009) ("[B]ecause Easterling was convicted following a guilty plea, 'the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized.'") (quoting *Haring v. Prosise,* 462 U.S. 306, 321 (1983)); *accord Lockett v. Ericson*, 656 F.3d 892, 896-97 (9th Cir. 2011); *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015).

Citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012), but not the precedents above, Appellees suggest that a successful § 1983 lawsuit *could* in some instances be inconsistent with a plaintiff's earlier guilty plea.  Appellees' Br. at 42.  Whatever that potential in some other case, it is not true here.  Nothing in

Jones's complaint – certainly not his claim that the materials Appellees seized from his Moore Street home were outside the scope of the warrant – is necessarily inconsistent with his being guilty of conspiracy to distribute cocaine.  The statement of facts in support of his guilty plea makes no mention of any evidence seized from Moore Street, only evidence seized from other locations. *See* Stmt. of Facts, *United States v. Jones,* No. 05-cr-386 (D.D.C. May 1, 2013), ECF No. 750.

## <u>CONCLUSION</u>

The Court should reverse the District Court's dismissal of Claim V of Jones's amended complaint and remand for further proceedings.

January 19, 2016                             Respectfully submitted,


<u>/s/ Anthony F. Shelley    </u>
Arthur B. Spitzer                           Anthony F. Shelley
American Civil Liberties Union of           Andrew T. Wise
the Nation's Capital                        Kathleen T. Wach
4301 Connecticut Ave. NW, Suite             Miller & Chevalier Chartered
434                                         655 Fifteenth St. NW, Suite 900
Washington, DC 20008                        Washington, DC 20005
Telephone: 202-457-0800, ext. 1004          Telephone: (202) 626-5800
Facsimile: 202-457-0805                     Facsimile: (202) 626-5801
Email: artspitzer@aclu-nca.org              Email:  ashelley@milchev.com
                                            Email:  awise@milchev.com
                                            Email:  kwach@milchev.com


*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 6,929 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

|  |  |
|---|---|
| <u>          January 19, 2016          </u> | <u>          /s/ Anthony F. Shelley          </u> |
| Date | Anthony F. Shelley |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2016, I electronically filed the foregoing

**REPLY BRIEF OF APPELLANT** with the Clerk of Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

      R. Craig Lawrence
      Jeremy S. Simon
      U.S. Attorney's Office – Civil Division
      555 Fourth Street NW
      Washington, DC 20530
      Email:  craig.lawrence@usdoj.gov
      Email:  jeremy.simon@usdoj.gov

I also certify that, on January 19, 2016, I will dispatch, within two business

days, by hand-delivery, the requisite EIGHT (8) copies of the **REPLY BRIEF OF**

**APPELLANT** to the Clerk of the United States Court of Appeals for the D.C.

Circuit.

                                       /s/ Anthony F. Shelley